OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of Ohio
are being transmitted electronically beginning May 27, 1992,
pursuant to a pilot project implemented by Chief Justice Thomas
J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.  Your
comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised to
check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.  The
advance sheets to Ohio St.3d will also contain the volume and
page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

The State of Ohio, Appellee, v. Loza, Appellant.
[Cite as State v. Loza (1994),      Ohio St.3d     .]
Criminal law -- Aggravated murder -- Death penalty upheld, when.
     (No. 93-1245 -- Submitted September 13, 1994 -- Decided
November 30, 1994.)
     Appeal from the Court of Appeals for Butler County, No.
CA91-11-0198.
     On January 16, 1991, defendant-appellant, Jose Trinidad
Loza, shot four members of the family of his girlfriend, Dorothy
Jackson.  The victims were shot in the head at close range while
they slept in their home in Middletown, Ohio.  Loza shot
Jackson's mother, Georgia Davis; her brother, Gary Mullins; and
her two sisters, Cheryl (Mullins) Senteno and Jerri Luanna
Jackson.  Mullins died almost immediately from his wound; Davis
and Senteno survived several hours before dying.  Jerri Jackson,
six months pregnant at the time of the shooting, died on January
31, 1991.
     On the afternoon of January 16, 1991, Gary Hoertt observed
an individual in a white Mazda pick-up truck with California
plates loading trash into his dumpster at his shop in
Middletown.  Having had previous problems with the unauthorized
use of his dumpster, Hoertt searched the dumpster for something
with which to identify the individual.  Hoertt found a letter in
the dumpster signed by Loza with a return address in Butler
County.  Hoertt read the letter, the contents of which indicated
that Loza was involved in a drive-by shooting in Los Angeles and
that he came to Ohio to avoid apprehension by the Los Angeles
police.
     After reading the letter, Hoertt called the Warren County
Sheriff's Department to report his discovery.  Hoertt was
informed that it would take some time before a deputy could
respond.  During that time, Hoertt was informed by an employee
that the individual, later identified as Loza, and a female
companion were seen in the vicinity of the nearby Greyhound bus
station.  Hoertt then called Middletown police detective Roger
Knable.
     After Knable arrived at Hoertt's shop and read the letter,
Knable and Hoertt went to the dumpster, where they retrieved

other items that Loza had discarded, which included: a knife; an empty box for a .25 caliber Raven automatic handgun; a receipt signed by a Judy A. Smith for the purchase of the handgun on January 15, 1991; a woman's purse; a blank check on the account of Georgia L. Davis; a general money order made payable to Jose Loza; clothing; and some other personal items.

As Hoertt and Knable were going through the items in Hoertt's office, Hoertt saw Loza approach the dumpster. Knable went to his cruiser and requested his dispatcher to notify Warren County deputies that the individual had returned and that he was going to speak to him. Knable identified himself as a police officer, approached Loza with his gun in his hand, and instructed Loza to place his hands on the front of the car. Knable searched Loza and asked his name. At this time, Loza identified himself as "Jose Rodriguez." Knable told Loza the reason he was being stopped was because of what he put in the dumpster. Loza responded "yes." Knable said the letter indicated that Loza may have been involved in a drive-by shooting in Los Angeles. Loza again responded "yes." Knable then informed Loza that he was going to handcuff him and hold him until Warren County deputies arrived. Knable then went to locate the woman who had been seen with Loza earlier. Loza said that the woman's name was Cynthia Rodriguez, that she was his wife, and that they were headed to California.

Knable then went inside the bus station and approached Dorothy Jackson. He asked her name and she responded "Dorothy Jackson." When asked, Jackson stated that Loza's name was "Jose Rodriguez," and that they were not married. Within a short time after Knable's initial contact with Loza, Warren County deputies arrived. The deputies determined Jackson was under age and that she planned to travel to California with Loza. When asked, Jackson gave her mother's telephone number to the deputies. Knable was unsuccessful in reaching Davis, Jackson's mother, by phone. Detectives Knable and George Jeffery then went to Davis's home at 1408 Fairmont, but did not receive any response when they knocked at the door. A neighbor approached the detectives and said that she had been trying unsuccessfully all day to get someone from the house to respond.

Because the police were unable to determine if Jackson had permission to travel out of state, she was arrested for being an unruly minor and was taken to the Warren County Juvenile Detention Center. Loza was arrested for contributing to the delinquency or unruliness of a minor and was taken to the Warren County Justice Center.

When the detectives began questioning Jackson at the juvenile detention center, she did not initially tell them of the murders. Shortly into the questioning, she began crying. She said she did not want to go to jail, and that Loza had killed her family. Jackson then told the detectives what she knew about the murders.

Based upon Jackson's statement, Detective Knable obtained a search warrant for the house at 1408 Fairmont. When the police entered the house, they discovered the victims.

Knable and Jeffery then returned to the Warren County Justice Center and began questioning Loza. The detectives' interview with Loza was videotaped. At the beginning of the interview, Loza waived his Miranda rights. Initially, Loza said

that he and Jackson were traveling to California with her mother's permission. The detectives told Loza they knew what had happened, and that it would be in his, Jackson's and the unborn baby's best interest if he just told the truth. About one hour into the interview, Loza confessed to the murders. Loza detailed the murders, including the order in which he shot the victims. Loza stated that Jackson was not in the house at the time of the murders, and that she did not know that he was going to kill her family members.

The detectives asked Loza when he began thinking about murdering Jackson's family members. Loza responded that he had been thinking about it since he had obtained the gun and particularly after Davis had threatened to have him arrested if he tried to leave the state with Jackson. Loza explained that he shot Davis because of her threats. When asked why he shot the others, he responded: "Knowing I had to do one, I had to do all. *** Because if I only done one, they would have -- they would have known it was me. If I would have done all of them, nobody would have found out."

Loza was indicted on four counts of aggravated murder, with three death penalty specifications and a gun specification added to each murder charge. Death specification number one alleged murder to escape detection and arrest, R.C. 2929.04(A)(3); death specification number two alleged "course of conduct" murders, R.C. 2929.04(A)(5); and death specification number three alleged murder during an aggravated robbery, R.C. 2929.04(7). Appellant pleaded not guilty to all the charges.

Appellant waived his right to a jury trial and proceeded to trial before a three-judge panel. During cross-examination of the state's final witness, the defense moved for a mistrial on the basis that the state had failed to disclose certain exculpatory evidence during discovery. Over the state's objection, the court granted a mistrial without prejudice. The trial court denied appellant's subsequent motion to bar his retrial on double jeopardy grounds.

After the court denied appellant's pretrial motion to suppress all statements and evidence seized in this matter, a trial by jury commenced on October 21, 1991.

Prior to submitting the case to the jury, the court dismissed the aggravated-robbery specification with respect to the aggravated murder of Jerri Jackson. The jury found appellant guilty on all four counts of aggravated murder. The jury also found appellant guilty of all remaining specifications except for the R.C. 2929.04(A)(3) specification with respect to the aggravated murders of Senteno and Jerri Jackson.

At the conclusion of the penalty phase, the court merged the R.C. 2929.04(A)(3) and 2929.04(A)(5) specifications with respect to the aggravated murders of Davis and Mullins. The jury recommended the death sentence for the aggravated murders of Mullins, Senteno, and Jerri Jackson and thirty years to life imprisonment for the aggravated murder of Davis. The court accepted the recommendation and sentenced appellant to death for the aggravated murders of Mullins, Senteno, and Jerri Jackson. The court also sentenced appellant to thirty years to life imprisonment for the aggravated murder of Davis and imposed a three-year term of actual incarceration for the firearm specification. The court ordered the life and three-year firearm

sentences to be served consecutively to appellant's death sentences.

The court of appeals affirmed the decision of the trial court.

The cause is now before this court upon an appeal as of right.

John F. Holcomb, Butler County Prosecuting Attorney, Noah E. Powers II and Daniel G. Eichel, Assistant Prosecuting Attorneys, for appellee.

David H. Bodiker, Ohio Public Defender, Joann Bour-Stokes and Joseph Wilhelm, Assistant Public Defenders, for appellant.

Per Curiam. J. We are required by R.C. 2929.04(A) to review Loza's thirty-three propositions of law. Many of these legal issues have been decided in prior cases and will be disposed of accordingly. State v. Poindexter (1988), 36 Ohio St.3d 1, 3, 520 N.E.2d 568, 570. We also must make an independent review of the record to determine whether the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. Finally, we must decide whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases.

For the reasons set forth below, we affirm the convictions and sentences of death.

I

A

In his first proposition of law, appellant asserts that psychological testimony concerning the voluntariness of his confession should have been admitted during the guilt phase of his trial.

The trial court did not permit the jury to hear testimony of Dr. Roger Fisher, a clinical psychologist, who would have testified that appellant's confession resulted from police coercion and duress caused by statements made by the police officers during the interrogation. Dr. Fisher would have testified that, in his opinion, appellant confessed because his background, psychological makeup, and his personal code of conduct required that he not "snitch" and that he "protect Dorothy." Dr. Fisher would have testified that because Loza had a difficult childhood he was compelled to confess to protect his girlfriend and unborn child. The trial court concluded that since it had made a pretrial determination that Loza's confession was voluntary, Dr. Fisher's testimony was not appropriate during the guilt phase.

Appellant argues that Crane v. Kentucky (1986), 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636, requires the admission of Dr. Fisher's testimony. In Crane, a sixteen-year-old defendant sought to introduce testimony regarding the psychological impact of the length of his interrogation and the manner in which it was conducted.1 The United States Supreme Court held that the exclusion of the testimony about the circumstances of the defendant's confession deprived him of his fundamental constitutional right to a fair opportunity to present a defense. The court recognized that while the issue of whether a confession is voluntary is a question of law for the court, the jury was entitled to hear the excluded testimony in order to make a

factual determination of whether the manner in which the confession was obtained cast doubts on its credibility.  Id. at 689, 106 S.Ct. at 2146, 90 L.Ed.2d at 644.

The testimony of Dr. Fisher is clearly outside the holding of Crane.  The testimony of the witnesses in Crane related to how the physical and psychological environment of the interrogation could have impacted the voluntariness and credibility of the confession.  Dr. Fisher's proffered testimony relates to how Loza's individual, psychological makeup, independent of the circumstances surrounding the interrogation, could have impacted the voluntariness and credibility of the confession.  Consequently, Crane does not require the admission of Dr. Fisher's testimony.

The jury was able to accurately consider the credibility and weight of the confession by watching it on videotape.  They could see and hear the tone and manner of the interrogation, the number of officers present, the physical characteristics of the room, and the length of the interrogation.  The jury had the opportunity to evaluate the credibility of the appellant and to give the confession its appropriate probative weight.  See State v. Jamison (1990), 49 Ohio St.3d 182, 191, 552 N.E.2d 180, 189 (the weight to be given evidence and the credibility of witnesses are jury issues).  Because the trial court already had ruled on the voluntariness of the confession and the jury had the opportunity to evaluate the credibility of the confession, the trial court did not abuse its discretion by excluding the testimony of Dr. Fisher during the guilt phase of the trial.

This proposition of law is overruled.

B

Appellant contends in his second and fifth propositions of law that his confession was involuntary because of psychological coercion, trickery, and deception by the police.

Appellant's pretrial motion to suppress was based upon what he contended was an illegal arrest at the Greyhound station.  Although he did not raise the issue of voluntariness in the motion to suppress, we will address the issue here.

A confession is involuntary and violative of the United States and the Ohio Constitutions if it is the product of "coercive police activity."  Colorado v. Connelly (1986), 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473, 484.  "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement."  State v. Edwards (1976), 49 Ohio St.2d 31, 3 O.O.3d 18, 358 N.E.2d 1051, paragraph two of the syllabus, vacated in part on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3147, 57 L.Ed.2d 1155.

Appellant contends that his confession was involuntary because detectives Knable and Jeffery were psychologically abusive during the interrogation.  Appellant asserts that the detectives were aware of his deep feelings for Jackson and his unborn child and they played upon those feelings in order to coerce appellant into confessing.  Additionally, appellant asserts the detectives offered a plethora of promises, including lenient treatment from the court, a visit with Jackson, and a

promise to release Jackson if he would just "tell *** the truth."

Admonitions to tell the truth are considered to be neither threats nor promises and are permissible. State v. Cooey (1989), 46 Ohio St.3d 20, 28, 544 N.E.2d. 895, 908; State v. Wiles (1991), 59 Ohio St.3d 71, 81, 571 N.E.2d 97, 112. The detectives did no more than urge the appellant to tell the truth.

The detectives' references to Jackson were made in response to appellant's repeated inquires about what would happen to her. No threats were made concerning Jackson or what would happen if appellant did not confess. The detectives merely informed appellant of the possible consequences of his actions. By the time the detectives were questioning appellant, Jackson had already told the police about appellant's involvement in the murders. Appellant sought the release of Jackson and he initiated the bargaining for her release. Under these circumstances, the statements made to the detectives were voluntary beyond doubt. See State v. Melchior (1978), 56 Ohio St.2d 15, 25-26, 10 O.O.3d 8, 14-15, 381 N.E.2d 195, 201-202.

The detectives made no promises regarding the treatment appellant would receive from the court. They did say that they would be willing to testify that appellant was cooperative. Promises that a defendant's cooperation would be considered in the disposition of the case, or that a confession would be helpful, does not invalidate an otherwise legal confession. Edwards, supra, at 40-41, 3 O.O.3d at 23-24, 358 N.E.2d at 1058-1059.

The detectives made no promises regarding a visit with Jackson; the detectives did say that they would try to make arrangements for appellant and Jackson to visit "after all of this [was] done." Contrary to the interpretation proffered by the defense, taken in the proper context of the entire confession the detectives' statements could not be viewed as a coercive tactic used by the police to elicit the confession.

Appellant also contends that the police used trickery to induce his confession. Knable told appellant that Jerri Jackson was alive. He also stated that she had identified her assailant, which was not the case. However, all the other circumstances surrounding the confession indicate that it was made voluntarily, and the confession is admissible even though the police misled appellant by suggesting that they received certain information from the victim of the crime. See Wiles, supra, at 81, 571 N.E.2d at 112.

Applying the test of voluntariness set forth in State v. Edwards, supra, and in carefully reviewing the totality of the circumstances in this case, we concur in the trial court's finding that the appellant's statements were voluntarily made and that the appellant's will to resist was not overborne by threats or improper inducements. Appellant was of majority age and was in command of his faculties at the time he confessed. He was not interrogated for an unreasonable length of time, and was not subjected to physical abuse or harsh conditions. We note that before the interrogation began, appellant waived his Miranda rights.2 Upon completion of the interrogation, when the detectives asked appellant if he felt threatened by them or if they had made any promises to him, appellant responded that "no," they had not threatened him, and agreed they had not made any promises to him. Through these affirmations, appellant has

confirmed that his confession was voluntarily made.

Thus, we reject appellant's propositions of law two and five.

C

In proposition of law three, appellant contests the constitutional sufficiency of the evidence with which he was convicted. Appellant argues that his confession was involuntary and therefore is not to be believed, that Jackson's testimony is neither reliable nor credible, that he had an affirmative defense to the child-stealing charge,3 that the state did not scientifically link Loza to the crime, and that the state's evidence did not establish beyond a reasonable doubt that appellant killed anyone. Appellant's assertions are without merit.

The inquiry with regard to the issue of the sufficiency of evidence must focus on whether the evidence could reasonably support a finding of guilt beyond a reasonable doubt. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573. If there is sufficient evidence upon which a jury could conclude that all the elements of an offense have been proved beyond a reasonable doubt, the evidence is legally sufficient. State v. Eley (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus.

In his first challenge to the sufficiency of the evidence, appellant asserts that his confession was not voluntarily made. We already have determined that appellant's confession was voluntarily made; therefore, the issue need not be addressed further.

In his second challenge to the sufficiency of the evidence, appellant argues that Jackson's testimony was neither reliable nor credible. The weight to be given evidence and the credibility of witnesses are primarily for the trier of fact. State v. Waddy (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819, 825 (citing State v. DeHass [1967], 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus). As has been previously stated by this court, "[n]ot even in a capital case may we sit as a 'thirteenth juror' *** as to a judgment of conviction." (Citation omitted.) State v. Tyler (1990), 50 Ohio St.3d 24, 33, 553 N.E.2d 576, 589.

Our independent review of the record establishes that the state produced evidence of appellant's guilt beyond a reasonable doubt. In addition to appellant's videotaped confession, appellant confessed to Jackson in person and in letters that he wrote to Jackson while he was in jail. Appellant also confessed to the murders in a letter that he wrote to his mother. Appellant was alone with the victims in the house at the time of the murders. Personal items belonging to Davis were found in the dumpster, where appellant was seen disposing of various items, and personal items of Davis and Senteno were also found among appellant's personal items which were packed in U-Haul boxes found at the Greyhound station. Appellant was identified as driving Mullins' truck. Forensic evidence established that the Raven .25 found among appellant's personal items in the U-Haul boxes was the murder weapon. Having found the evidence of

appellant's guilt sufficient to support the convictions, appellant's challenge is without merit.

In his third challenge to the sufficiency of the evidence, appellant claims to have an affirmative defense to specification one in the bill of particulars, which states: "*** Jose Trinidad Loza committed the above offense for the purpose of escaping detection, apprehension, trial, and punishment for other offenses committed by him, to wit: child-stealing and contributing to the delinquency of a minor with respect to his victim's minor child, Dorothy Jackson." Loza asserts that he reasonably believed that his conduct was necessary to preserve Jackson's health or welfare. See R.C. 2905.04(B). Each death specification in a multiple-count aggravated murder case must be considered separately. State v. Hooks (1988), 39 Ohio St.3d 67, 529 N.E.2d 429. Loza's contention that his convictions must be overturned is without merit, because each aggravated murder charge had multiple death penalty specifications attached of which Loza was found guilty.

Appellant further contends that the state failed to establish his identity as the offender through scientific evidence. Although laboratory technicians did not find any blood or gun powder residue on appellant's clothing, it must be noted that the .25 caliber bullets did not splatter much blood, as can be evidenced from the crime scene photos and videotape. Although no blood or gun powder residue scientifically linked the appellant to the crime, there was sufficient probative evidence from which reasonable minds could conclude that Loza committed the crimes alleged. Accordingly, appellant's third proposition of law is without merit.

D

In his fourth proposition of law, appellant argues that the trial court erroneously denied his motion to bar his retrial on double-jeopardy grounds. Appellant initially waived his right to a jury trial and proceeded before a three-judge panel. During cross-examination of the state's final witness, it was discovered that a chemical analysis of appellant's clothing failed to reveal the presence of blood. The results of this analysis were not made known to the appellant before trial. Over the state's objection, the three-judge panel, in a split decision, granted the defense motion for a mistrial.

In a subsequent motion, appellant claimed the state intentionally provoked a mistrial by deliberately withholding the test results and other evidence, which could have been used to challenge Jackson's credibility. The trial court determined that the state neither intended to provoke a mistrial nor acted in an overreaching manner.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, protects a criminal defendant from repeated prosecutions for the same offense. Oregon v. Kennedy (1982), 456 U.S. 667, 671, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416, 422. When a trial court grants a criminal defendant's request for a mistrial, the Double Jeopardy Clause does not bar a retrial. Id. at 673, 102 S.Ct. at 2088, 72 L.Ed.2d at 423. A narrow exception lies where the request for a mistrial is precipitated by prosecutorial misconduct that was intentionally calculated to cause or invite a mistrial. Id. at 678-679, 102 S.Ct. at 2091, 72 L.Ed.2d at 427.

See, also, State v. Doherty (1984), 20 Ohio App.3d 275, 20 OBR 338, 485 N.E.2d 783. Only where the prosecutorial conduct in question is intended to "goad" the defendant into moving for a mistrial may defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion. Oregon v. Kennedy, supra, at 676, 102 S.Ct. at 2089, 72 L.Ed.2d at 425.

After reviewing the record, we must conclude that the conduct of the state was not intended to provoke the appellant into moving for a mistrial. The prosecution was not aware of the chemical analysis report until the morning of the last day of trial. There is no indication that the state engaged in an intentional act of deception, or that the state intentionally withheld exculpatory evidence. For these reasons, appellant's fourth proposition of law is overruled.

E

Appellant's sixth and seventh propositions of law are interrelated. In proposition of law six, appellant asserts that Detective Knable lacked probable cause to arrest him, and, therefore, the ensuing confession must be suppressed. In proposition of law seven, appellant argues that the trial court committed plain error in admitting appellant's statements to Knable following the investigatory stop.

Appellant argues that Knable had neither probable cause nor a reasonable suspicion to believe that appellant had committed any crime and, therefore, his warrantless seizure was unjustified. We disagree.

In order to warrant a brief investigatory stop, the police officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio (1967), 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906. Such a stop must be viewed in light of the totality of the surrounding circumstances presented to the police officer. State v. Freeman (1980), 64 Ohio St.2d 291, 18 O.O. 3d 472, 414 N.E.2d 1044. The standard for reviewing such police conduct is an objective one: would the facts available to the officer at the moment of the seizure or the search "'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906; State v. Williams (1990), 51 Ohio St.3d 58, 60-61, 554 N.E.2d 108, 111.

Knable was able to point to specific and articulable facts which warranted his actions. Knable stopped Loza because of the letter that was found in the dumpster indicating that there was a drive-by shooting in Los Angeles in which three people were killed and the author of the letter, Loza, left Los Angeles because the police were searching for him. Loza was identified as the man who had disposed of items in the dumpster. An empty gun box was found in close proximity to the letter in the dumpster. Knable could not be sure whether Loza or his companion was armed. It was necessary for Knable to prevent Loza from leaving the area while he went to talk to Dorothy Jackson. Loza was detained in the back of Knable's car until Warren County deputies arrived. Once the deputies arrived, Knable instructed them to remove Loza's handcuffs, as there was no longer a need to restrain him.

Appellant's contention that the statements he made to Knable

after being stopped should be suppressed because he was not given Miranda warnings is baseless.  Knable merely asked Loza his name and other general questions associated with a police investigation.  This type of questioning is not affected by the Supreme Court's holding in Miranda.  Miranda v. Arizona (1966), 384 U.S. 436, 477-478, 86 S.Ct. 1602, 1629-1630, 16 L.Ed.2d 694, 725-726.

Under the circumstances, Knable was justified in stopping Loza, conducting a limited search for weapons, and detaining Loza until the Warren County deputies arrived.  The circumstances surrounding the stop rendered Knable's conduct reasonable and appropriate under the guidelines established by Terry and its progeny.  Accordingly, we reject appellant's sixth and seventh propositions of law.

F

In his eighth proposition of law, appellant argues that the trial court applied an erroneous standard in overruling his motion to suppress.  In his ninth proposition of law, appellant argues that the trial court did not comply with Crim. R. 12(E), because it did not state its essential factual findings on the record when it overruled Loza's motion to suppress.  Since the evidence supported the denial of the motion, any error would be harmless.

The trial court applied a "reasonableness" standard when it ruled on the motion to suppress.  The court stated: "[T]he court on analysis finds it very difficult to think of what else Officer Knable could have done, or if he hadn't done as he did quite likely would have been derelict in his duties."

The standard applied in Terry is an objective standard based upon reasonableness.  The trial court did not look at Detective Knable's actions subjectively, as suggested by the defense.  Rather, after looking at all the surrounding circumstances, the court properly applied an objective standard to Knable's actions.  We therefore reject appellant's eighth proposition of law.

Appellant asserts the trial court failed to state its essential findings of fact when it overruled his motion to suppress.  Appellant contends that this is a violation of Crim. R. 12(E) and serves to frustrate the review required in a capital case by R.C. 2929.05.  R.C. 2929.05 requires the court of appeals and this court to review and independently weigh all the facts and other evidence disclosed in the record.  Because our review is independent of the lower court's and encompasses the entire record, a partial failure by the trial court to state all its essential factual findings does not serve to hinder the review process.

Furthermore, in order to invoke Crim. R. 12(E), the defendant must request that the court state its essential findings of fact in support of its denial of a motion.  State v. Benner (1988), 40 Ohio St.3d 301, 317, 533 N.E.2d 701, 718.  Appellant failed to make such a request.  Upon an independent review of the record, we find the evidence supports the denial of appellant's motion to suppress.  Accordingly, appellant's ninth proposition of law is rejected.

G

In propositions of law ten, eleven, twelve, and eighteen, appellant contests certain jury issues.

In proposition of law ten, appellant argues the trial court denied him due process of law by rejecting a proposed jury questionnaire. "The scope of voir dire is within the trial court's discretion and varies depending on the circumstances of each case." State v. Bedford (1988), 39 Ohio St.3d 122, 129, 529 N.E.2d 913, 920, citing State v. Anderson (1972), 30 Ohio St.2d 66, 73, 59 O.O.2d 85, 89, 282 N.E. 2d 568, 572. The trial judge had discretion to limit voir dire and did not abuse this discretion in rejecting the defense questionnaire in this case. Furthermore, appellant had ample opportunity to freely question prospective jurors during voir dire. See State v. Mills (1992), 62 Ohio St.3d 357, 365, 582 N.E.2d 972, 981. Thus, appellant's right to a meaningful voir dire was fully preserved, and this proposition of law is overruled.

In proposition of law eleven, appellant asserts that a prospective juror who believes the responsibility for determining punishment in a capital case rests with the trial court should not be permitted to serve on a capital jury.

During voir dire, a prospective juror twice indicated that she believed it was up to the court to determine what the punishment should be in the event the appellant was found guilty. However, when defense counsel asked whether she could "listen to the Court, listen to the instructions, listen to the evidence, follow the rules of law the Judge says applies, and make your decision accordingly," the juror clearly indicated that she understood her responsibility as a juror and would follow the law as instructed. In addition, the juror did not express any reluctance in sitting on the jury, and she agreed that the verdicts were hers.

Appellant also contests the trial court's instructions during the guilt phase of the trial, which indicated that any recommendation of death by the jury would only be a recommendation and would not be binding on the court. "The jury in the penalty phase of a capital prosecution may be instructed that its recommendation to the court that the death penalty be imposed is not binding and that the final decision as to whether the death penalty shall be imposed rests with the court." State v. Jenkins (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph six of the syllabus. This court has repeatedly stated our preference that no comment be made on the question of who bears the responsibility for determining the appropriateness of a death sentence. However, we also have held that such an instruction accurately states Ohio law and does not constitute reversible error. State v. Henderson (1988), 39 Ohio St.3d 24, 30, 528 N.E. 2d 1237, 1243. See, also, State v. Williams (1986), 23 Ohio St.3d 16, 21-22, 23 OBR 13, 18-19, 490 N.E. 2d 906, 912; State v. Steffen (1987), 31 Ohio St.3d 111, 113-114, 31 OBR 273, 275, 509 N.E. 2d 383, 387-388. Appellant's eleventh proposition of law is, therefore, without merit.

In his twelfth proposition of law, appellant argues that the trial court should have conducted additional voir dire when it learned that a seated juror had a problem that might affect the juror's ability to be impartial. The trial court received a note from a juror's husband which reflected that he was very upset about her jury selection, that he wanted her to be excused, and that she might as well leave home for three weeks. Defense counsel did not challenge the seating of this juror for cause,

nor did he exercise any of his peremptory challenges to prevent this juror from serving.  The juror never expressed reluctance to sit on the jury; it was her husband who was reluctant to have her absent for a protracted period of time.  The trial court did not abuse its discretion by retaining this juror.  This proposition of law is meritless.

In his eighteenth proposition of law, appellant asserts that the trial court erred by allowing jurors to take notes and bring them into deliberations.  The rule in Ohio is that notetaking by a juror does not, by itself, constitute unfair prejudice to the defendant.

In addition, a trial court has the discretion to permit jurors to take notes if warranted under the circumstances.  See State v. Jones (1988), 50 Ohio App.3d 40, 552 N.E.2d 651; and State v. Williams (1992), 80 Ohio App.3d 648, 610 N.E.2d 545.  There is nothing in the record that indicates that the appellant suffered undue prejudice as a result of juror notetaking.  Furthermore, as there is no indication that the trial court acted unreasonably, arbitrarily, or unconscionably, appellant's eighteenth proposition of law is rejected.

H

In his thirteenth proposition of law, appellant challenges the introduction of evidence relating to his alleged involvement in the following unrelated criminal acts: a drive-by shooting in California, his juvenile arrest, gang-related activities, and participation in the assault of a man in California.

Generally, evidence of the bad character of a witness is inadmissible. Evid. R. 404(B) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

See, also, R.C. 2945.59.4

Appellant failed to object to much of the evidence, which waives all but plain error.  State v. Landrum (1990), 53 Ohio St.3d 107, 111, 559 N.E.2d 710, 717.  "The failure to object has been held to constitute a waiver of the error and to preclude its consideration upon appeal, for, absent an objection, the trial judge is denied an opportunity to give corrective instructions as to the error."  State v. Wade (1978), 53 Ohio St.2d 182, 188, 7 O.O.3d 362, 365, 373 N.E.2d 1244, 1248.  Concerning the items to which Loza did object, the trial judge gave a curative instruction to the jury that it was to disregard the statements relating to the drive-by shooting, the juvenile arrest and gang involvement.  A jury is presumed to follow the instructions given to it by the trial judge.  State v. Henderson, supra, at 33, 528 N.E.2d at 1246, citing Parker v. Randolph (1979), 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713.  Furthermore, evidence admitted at trial refuted the appellant's involvement in the drive-by shooting.  Appellant denied any involvement in the drive-by shooting in his confession, and Knable testified that he did not find any connection between Loza and any drive-by shootings in Los Angeles.

In light of the other overwhelming evidence, we find that this testimony did not contribute to appellant's conviction.

Therefore, appellant's thirteenth proposition of law is overruled.

I

In his fourteenth proposition of law, appellant contests the admission of "inflammatory and gruesome" photographs of the victims and a videotape from the crime scene.

"Properly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number." State v. Maurer (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, paragraph seven of the syllabus. The photographs and videotape had significant probative value in proving the state's case. This court has previously held that "'[t]he state must prove, and the jury must find, that the killing was purposefully done. The number of shots fired, the places where the bullets entered the body, and the resulting wounds are all probative evidence of a purpose to cause death.'" Id. at 265, 15 OBR at 401, 473 N.E.2d at 792, citing State v. Strodes (1976), 48 Ohio St.2d 113, 116, 2 O.O.3d 271, 272, 357 N.E.2d 375, 378, vacated in part on other grounds, (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1154. The photographs and videotape were particularly illustrative of the fact that the victims' wounds involved the splattering of very little blood. The lack of blood splattering was relevant to rebut the appellant's claim that the absence of blood on the clothes he wore shows that he could not have committed the murders.

The photographs that were admitted were neither repetitive nor cumulative. Of those that were admitted, perhaps only two could be considered "gruesome." However, the mere fact that a photograph is gruesome is not sufficient to render it per se inadmissible. State v. Maurer, supra. The probative value of each challenged exhibit appears to outweigh any prejudicial impact the photographs may have had.

Additionally, with respect to the videotape of the crime scene, appellant objected and the court excluded the sound. The video depicts the crime scene as Loza left it. Because a small caliber gun was used, not much blood can be seen. Overall, the victims merely appear to be asleep. Although the portion of the tape that shows the paramedics assisting Jerri Jackson is dramatic, when viewed without the sound, as it was for the jury, it is neither gruesome nor prejudicial.

Accordingly, appellant's fourteenth proposition of law is without merit.

J

In his fifteenth proposition of law, appellant contests the admissibility of the testimony of Stephen Greene, a document examiner, who testified that appellant wrote letters to his mother and to Jackson in which he admitted culpability for the murders. Because the defense did not object to this testimony at trial, reversal requires a finding of plain error.

No plain error occurred with regard to the admissibility of Greene's testimony. Appellant never disputed the fact that he wrote the letters. He handed the letters to Knable personally and asked Knable to mail them. Furthermore, appellant was

afforded the protection of Evid. R. 402, which provides that all relevant evidence is admissible, and Evid. R. 702, which provides for testimony by experts.

Greene was a qualified expert document examiner. He had twelve years' experience as a document examiner with the Ohio Bureau of Criminal Identification and Investigation, he received training with the Secret Service and the FBI, and he conferred regularly with various other examiners in Ohio and Michigan. He testified that based upon his education, training, skill, and experience as a handwriting analysis examiner and based on his examination of the letters and handwriting samples provided by appellant, it was his opinion, within a reasonable degree of scientific certainty, that all the letters were written by appellant. Additionally, "It is a well settled rule in this state *** [that handwriting comparisons] *** may be made *** by persons skilled in handwriting, such as are usually called experts." Bell v. Brewster (1887), 44 Ohio St. 690, 696, 10 N.E. 679, 683. Thus, appellant's fifteenth proposition of law is rejected.

K

Appellant in his sixteenth proposition of law challenges the constitutionality of the actions of the police in seizing and copying letters that appellant wrote from jail and admitting the letters into evidence against him absent special justification. Appellant asserts that the letters were the product of an illegal search and seizure and were admitted in violation of his Fourth Amendment rights, and that the seizure, reproduction and admission of the letters violated his First Amendment rights. Appellant's arguments are without merit.

Appellant sets forth a two-part test found in Procunier v. Martinez (1973), 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224, which pertains to the censorship of inmate correspondence. A more appropriate test is set forth in Turner v. Safley (1986), 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64, which holds that prison regulations on correspondence are upheld if "reasonably related" to legitimate penological interests.

Warren County prison officials had a legitimate security interest in Loza's correspondence. Loza was writing to Dorothy Jackson, an inmate at the juvenile detention center at the time and a key witness in the state's case against him. Jackson had already expressed her fear of appellant and mortification over what he had done to her family. The state had an important interest in ensuring that appellant was not threatening or intimidating Jackson.

Furthermore, the letters were voluntarily written and no threat or coercion was used to obtain them -- appellant handed the unsealed letters to Knable and asked him to mail them. The letters came into the possession of the officials under an established practice, which was reasonably designed to promote discipline. Under these conditions, there was not an unreasonable search and seizure in violation of appellant's constitutional rights or an infringement on appellant's First Amendment rights. Stroud v. United States (1919), 251 U.S. 15, 21, 40 S.Ct. 50, 64 L.Ed. 103. Appellant's sixteenth proposition of law is rejected.

L

Appellant contends in his seventeenth proposition of law

that due to prosecutorial misconduct during the guilt phase of the trial, he was unduly prejudiced and therefore deprived of the opportunity for a fair trial. Because appellant failed to object until the close of all arguments, he has waived any right, save plain error, to object to the prosecutor's initial closing argument. See State v. Johnson (1989), 46 Ohio St.3d 96, 102, 545 N.E.2d 636, 642.

In general terms, the conduct of a prosecuting attorney during trial is not a ground for error unless that conduct deprives the defendant of a fair trial. State v. Maurer, 15 Ohio St.3d at 266, 15 OBR at 402, 473 N.E.2d at 793; State v. Wade, 53 Ohio St.2d at 186, 7 O.O.3d at 364, 373 N.E.2d at 1247; Scott v. State (1923), 107 Ohio St. 475, 490-491, 141 N.E. 19, 24; State v. Papp (1978), 64 Ohio App. 2d 203, 211, 18 O.O.3d 157, 162, 412 N.E.2d 401, 407, 412 N.E.2d 401. The crucial aspect of the analysis on this issue is the effect of the prosecutor's statements on the jury's decision to recommend the death penalty.

Parties are granted latitude in closing arguments, and the question as to the propriety of these arguments is generally considered one falling within the sound discretion of the trial court. State v. Maurer, 15 Ohio St.3d at 269, 15 OBR at 404, 473 N.E.2d at 794-795. If it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found appellant guilty, then his conviction will not be reversed. State v. Smith (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883.

Appellant asserts that the prosecution improperly commented on his failure to testify at trial. The prosecutor quoted to the jury a portion of the videotaped confession, in which appellant stated, "I done it and I'm taking responsibility for it. It's the whole truth and this is the same thing I'll be saying in court." In the context in which this statement was given, the prosecution did not focus on Loza's prior statement that he would testify at trial, but rather, on Loza's admission of guilt.

As to appellant's argument that the prosecutor improperly commented on Loza's request for a lesser included offense instruction on murder during final argument, the prosecutor merely was responding to defense counsel's closing argument, in which defense counsel urged a guilty verdict on a murder charge as an alternative to the charge of aggravated murder. Both parties have latitude in responding to the arguments of opposing counsel. State v. Brown (1988), 38 Ohio St.3d 305, 317, 528 N.E.2d 523, 538.

Appellant also alleges that the prosecutor improperly inflamed the passions and prejudices of the jury by appealing to the jury's emotional reaction to the crime to secure a conviction out of moral indignation. A closing argument that goes beyond the record may constitute prejudicial error, particularly where the remarks call for the jury to convict in order to meet a public demand. However, the closing argument must be reviewed in its entirety to determine if the prosecutor's remarks were prejudicial. State v. Moritz (1980), 63 Ohio St.2d 150, 157, 17 O.O.3d 92, 97, 407 N.E.2d 1268, 1273. In the instant cause, we conclude that a review of the prosecutor's closing argument in its totality discloses no prejudice to the appellant. There are several references throughout the closing argument that the jury

should decide the case based upon the evidence and the law. Further, the court instructed the jury to decide the case on the evidence. As has been previously stated, it is presumed that the jury will follow the instructions given to it by the judge. State v. Henderson, 39 Ohio St.3d at 33, 528 N.E.2d at 1246.

Appellant also asserts prosecutorial misconduct, in that the prosecution misinformed the jury on the law by giving an overly broad definition of an element of a "theft offense," and that because of this definition, Loza could be convicted of a theft offense by a mere finding that he used the victims' property without their consent.

The statements made by counsel in closing arguments do not govern the law that should be applied in this case. The trial court gave the charge with regard to aggravated robbery and defined each term in the charge. The trial court defined "theft" as follows: "[T]he term 'theft' as used in this case means knowingly obtaining property owned by another without the owner's consent and for the purpose of depriving the owner of that property." This is the law that governed this case. We presume that the jury followed the instructions of the judge.

Without reservation, we can say beyond a reasonable doubt that, despite the prosecutor's comments, the jury would have found Loza guilty; therefore, the conviction need not be reversed. Appellant's seventeenth proposition of law is meritless.

M

In his nineteenth proposition of law, appellant contends that he was deprived of due process of law, because the jury had the entire videotaped confession replayed during its deliberations.

Ohio courts follow the majority rule which permits the replaying of a videotape exhibit during jury deliberations. There is no prejudicial error in the jury's viewing a second time an exhibit properly admitted into evidence. State v. Clark (1988), 38 Ohio St.3d 252, 257, 527 N.E.2d 844, 851. Generally, the propriety of sending a defendant's confession into the jury room rests within the sound discretion of the trial judge. State v. Doty (1916), 94 Ohio St. 258, 266-267, 113 N.E. 811, 814. Because this court believes that it is not a per se abuse of discretion to allow videotape recordings to be replayed in the jury room, the only question remaining on this aspect is whether it was an abuse of discretion to replay the tape before the instant jury. We do not believe that the trial court's action amounted to an abuse of discretion. Thus, we reject appellant's nineteenth proposition of law.

N

Appellant's twenty through twenty-third and thirty-first propositions of law pertain to the trial court's instructions given during the guilt phase of the trial. Because Loza raises these objections for the first time here, he has waived all but plain error. State v. Underwood (1983), 3 Ohio St.3d 12, 13, 3 OBR 360, 361, 444 N.E.2d 1332, 1333.

In proposition of law twenty, appellant argues that the trial court erred by instructing the jury that the duty of punishment may be placed by law on the court. We already have rejected this argument above.

In proposition of law twenty-one, appellant argues that the

trial court failed to instruct the jury on contributing to the delinquency or unruliness of a minor. Loza failed to object to the trial court's instructions and, therefore, he must demonstrate that but for the error, the outcome of the trial clearly would have been different. Crim. R. 30(A); State v. Long (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus.

The jury acquitted Loza of the specification in Counts III and IV, pertaining to the aggravated murder of Cheryl Senteno and Jerri Jackson, and recommended thirty years to life imprisonment as to Count I, pertaining to the aggravated murder of Georgia Davis. With regard to those charges, the argument is moot.

Because Count II contains multiple specifications, the finding of guilt on any other specification is sufficient to warrant the death penalty. State v. Mapes (1985), 19 Ohio St.3d 108, 112, 19 OBR 318, 322, 484 N.E.2d 140, 145. The jury convicted Loza of R.C. 2929.04(A)(3) (escape detection), (A)(5) (course of conduct) and 2929.04(A)(7) (felony murder) specifications. The trial court merged the R.C. 2929.04(A)(3) and the 2929.04(A)(5) specifications and instructed the jury "to consider those two circumstances as a single aggravating circumstance." Accordingly, even a finding of plain error would not affect the sentence. Therefore, we overrule appellant's twenty-first proposition of law.

In proposition of law twenty-two, appellant argues that the trial court's instructions on "purpose" created an unconstitutional conclusive presumption and relieved the state of its burden to prove this element beyond a reasonable doubt.

The trial court defined "purpose" as follows: "Purpose and intent mean the same thing. *** The purpose with which a person does an act is determined from the manner in which it is done, the weapon used, and all the other facts and circumstances in evidence. If a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life, the purpose to cause the death may be inferred from the use of the weapon." The trial court did not create a conclusive presumption with this instruction. The court used the word "may," indicating that this was a permissible presumption -- one the jury could choose to accept or not. See State v. Edwards, 49 Ohio St.2d at 45, 3 O.O.3d at 26, 358 N.E.2d at 1061. This proposition of law is without merit.

In his next proposition of law, appellant asserts that the trial court erred in giving a supplemental charge to the jury. The supplemental charge that the trial court gave was previously approved in State v. Howard (1989), 42 Ohio St.3d 18, 537 N.E.2d 188, paragraph two of the syllabus.

After deliberating for a protracted period of time, the jury asked for clarification on how to decide a specification if a unanimous verdict could not be reached. The court advised the jury to exhaust all reasonable efforts to reach a unanimous verdict, gave the Howard charge, and told the foreman to note on the verdict any failure to reach a unanimous verdict. After continuing its deliberations for several more hours, the jury reached a unanimous verdict.

Because the trial court gave a supplemental instruction that was previously approved by this court, appellant's twenty-third proposition of law is without merit.

In proposition of law thirty-one, appellant contends that the trial court committed error by instructing the jury in accordance with the statutory definition of "reasonable doubt" in R.C. 2901.05(D). In State v. Van Gundy (1992), 64 Ohio St.3d 230, 232, 594 N.E.2d 604, 606, this court stated: "'The definition of "reasonable doubt" set forth in R.C. 2901.05 correctly conveys the concept of reasonable doubt and, therefore, is not an unconstitutional dilution of the state's requirement to prove guilt beyond a reasonable doubt.'" Citing State v. Nabozny (1978), 54 Ohio St.2d 195, 8 O.O.3d 181, 375 N.E. 2d 784, paragraph two of the syllabus. This contention, therefore, is rejected.

O

In proposition of law twenty-four, appellant argues that the trial court erred by allowing the prosecutor to inject Loza's future dangerousness into the sentencing proceedings.

During the sentencing phase, the prosecution asked defense psychologist Dr. Fisher if Loza regretted the offense and if Loza would do it again under the same circumstances. Fisher responded that Loza did not express any regrets over the deaths and that he would commit the offenses again under the same circumstances. The prosecutor also referred to the lack of remorse Loza displayed in his videotaped confession.

Our review of the record indicates that these comments were not to be interpreted as non-statutory aggravating circumstances, but rather, were related to Loza's "history, character, and background" as specified in R.C. 2929.04(B). The trial court instructed the jury on statutory aggravating circumstances and mitigating factors only. Appellant's contention is without merit.

P

In his twenty-fifth proposition of law, appellant contends that the prosecutor's sentencing remarks denied him a fair penalty determination. Reversal on this issue requires a finding of plain error because Loza did not object to these remarks at trial. In our independent assessment, we find that no plain error exists. Any impropriety in the prosecution's argument did not materially prejudice Loza.

A prosecutor can freely argue the weight to be given to potentially mitigating factors. The weight to be given such evidence is up to the individual decision-maker, who must be allowed to freely decide whether to give any weight to the mitigating evidence. State v. Steffen, 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, at paragraph two of the syllabus. The prosecution's remarks were properly directed to the weight to be given to the mitigating factors presented by Loza.

Appellant also contends the prosecutor sought to inject non-statutory aggravating circumstances into the case by making comments about one of the victims being pregnant, by stating that there were four victims, and by mentioning Loza's gang affiliations. It is true that the nature and circumstances of an offense are not a statutory aggravating circumstance. However, "R.C. 2929.04(B) requires the jury, trial court, or three-judge panel to 'consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense ***.'" (Emphasis sic.) State v. Stumpf (1987), 32 Ohio St.3d 95, 99, 512 N.E.2d 598, 604.

Appellant also contends that his death sentence should be reversed because the prosecution's comments about the murder of a pregnant woman and the loss of many expected years of life allegedly violates Ohio law as improper victim-impact evidence. Although reliance upon victim-impact evidence in arguing for the death penalty is improper and constitutes error in the sentencing phase of a capital trial, the same evidence may be admissible, relevant evidence in the guilt phase of the proceedings.

No prosecutorial misconduct deprived Loza of his right to a fair and reliable penalty determination. Appellant's twenty-fifth proposition of law is without merit.

Q

In his twenty-sixth proposition of law, appellant contends that the trial court discounted certain mitigating evidence offered by Loza, because it was not relevant to the appropriateness of the death penalty.

The trial court did not discount the mitigating evidence presented by appellant; it determined that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt. The weight to be given mitigating factors is left to a sentencing authority's sound judgment. State v. Mills, 62 Ohio St.3d at 376, 582 N.E.2d at 988. As noted below, we agree with the trial court's assessment on this issue. This proposition is rejected.

R

In proposition twenty-seven, appellant claims that he was denied effective assistance of counsel.

A reversal based upon a claim of ineffective assistance of counsel requires the defendant to show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced his defense so as to deprive him of a fair trial. Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.E.2d 674, 693. The proper standard for judging attorney performance is whether the attorney provided reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. at 687-688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The ultimate focus must be on the fundamental fairness of the proceeding that is being challenged. Id. at 696, 104 S.Ct. at 2069, 80 L.Ed.2d at 699. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. Id. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699. With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

Even though defense counsel did not raise at trial the issues in propositions of law three, seven through nine, eleven through eighteen, twenty and twenty-one, twenty-eight, and thirty-one, defense counsel's performance did not fall below an objective standard of reasonableness. Furthermore, Loza does not demonstrate that there is a reasonable probability that, but for the alleged errors, the result of the proceeding would have

been different.  Appellant's ineffective assistance of counsel claim is overruled.

S

In proposition of law twenty-eight, appellant argues that the trial court erred in imposing a thirty years to life sentence and a three-year term of imprisonment consecutive to a death penalty.

The prison sentence is rendered moot by the imposition of the death sentence.

Propositions of law twenty-nine and thirty pertain to residual doubt.  In proposition of law twenty-nine, appellant relies upon residual doubt to challenge the appropriateness of his death sentences.  Appellant asserts numerous factors that purportedly create a residual doubt with respect to his guilt.  These factors include the trauma of his childhood, his father abandoning the family when Loza was very young, his surreptitious entrance into the United States to be reunited with his mother, and his emotional insecurity coupled with his desire to protect his girlfriend and unborn child.  In addition, appellant argues that Jackson's testimony was not credible, and that there was no scientific evidence connecting Loza to the murders.

These matters were presented to the jury, the trial judge, and the court of appeals, all of whom found no residual doubt.  In our independent assessment of the factors presented by Loza, we support the findings of the lower courts.  Appellant's twenty-ninth proposition of law is without merit.

In proposition of law thirty, appellant argues that the court of appeals erred in its independent sentence review by deferring to the trial court's finding that no residual doubt existed.  The court of appeals did not simply defer to the trial court's finding; it supported the findings after conducting its own independent review of the case and the mitigating factors presented by Loza.  Proposition of law thirty is without merit.

T

In proposition of law thirty-two, appellant asserts that Ohio's death penalty proportionality review is unconstitutional.  This claim is summarily rejected.  See State v. Steffen, supra, paragraph one of the syllabus.

In his final proposition of law, appellant challenges the constitutionality of Ohio's death penalty statute.  This argument also is summarily rejected.  See State v. Jenkins, supra (15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264).

II

R.C. 2929.05 requires that we perform an independent review of the record to determine whether the aggravating circumstances outweigh the mitigating factors asserted beyond a reasonable doubt.

The aggravating circumstances are as follows: Loza, with prior calculation and design, murdered four people for the purpose of escaping detection, apprehension, trial, or punishment for other offenses (R.C. 2929.04[A][3]); Loza murdered the four victims as part of a course of conduct involving the purposeful killing of two or more persons (R.C. 2929.04[A][5]); and Loza murdered the four victims while acting as the principal offender in the commission of aggravated robbery (R.C. 2929.04[A][7]).

As to the statutory mitigating factors, the evidence shows that Loza was aware that Dorothy Jackson was the target of

chronic physical and verbal abuse from Davis, Mullins and Senteno. In this respect, the evidence indicates that their actions may have "induced or facilitated" the offense. R.C. 2929.04(B)(1). Due to the same set of circumstances, Loza may also have been under duress, coercion or strong provocation at the time of the murders. R.C. 2929.04(B)(2). Loza was not under any mental disease or defect and did not lack mental capacity at the time of the murders; therefore, R.C. 2929.04(B)(3) is inapplicable. Loza was close to nineteen years old at the time the murders occurred; accordingly, R.C. 2929.04(B)(4) is a mitigating factor. The record does not indicate that Loza had a significant history of prior criminal convictions or delinquency adjudications; therefore, R.C. 2929.04(B)(5) is a mitigating factor. R.C. 2929.04(B)(6) is inapplicable as a mitigating factor because Loza was the principal offender. We already have evaluated the mitigating factor of residual doubt as required by R.C. 2929.04(B)(7).

Independently weighing the aggravating circumstances against the mitigating factors, we find that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.

III

Pursuant to our statutory duty, we now assess whether the imposition of the death penalty in this case is disproportionate or excessive when compared to other cases in which we have imposed the death penalty.

After conducting a proportionality review and comparing Loza's case with similar cases, we find that Loza's death sentence is proportionate and not excessive. See State v. Brown (1988), 38 Ohio St. 3d 305, 528 N.E.2d 523; State v. Frazier (1991), 61 Ohio St.3d 247, 574 N.E.2d 483; State v. Hooks (1988), 39 Ohio St.3d 67, 529 N.E.2d 429; State v. Lott (1990), 51 Ohio St.3d 160, 555 N.E.2d 293.

Accordingly, appellant's convictions and sentences are affirmed.

Judgment affirmed.

Moyer, C.J., A.W. Sweeney, Douglas, Wright, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.

FOOTNOTES:

1 The defendant in Crane testified that he had been detained in a windowless room for a protracted period of time, that he had been surrounded by as many as six police officers during the interrogation, that he had repeatedly requested and been denied permission to telephone his mother, and that he had been badgered into making a confession.

2 See North Carolina v. Butler (1979), 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286, 292 (an express written or oral statement of waiver of the right to remain silent or the right to counsel is usually strong proof of the validity of that waiver).

3 One of the death specifications with which the appellant was charged with respect to the murders of Mullins and Davis was the commission of the offense to escape detection, apprehension, trial or punishment for another offense committed by the offender, namely, the crimes of child stealing and contributing to the unruliness of a minor, pursuant to R.C. 2929.04(A)(3), 2905.04(A) and 2919.24.

4 R.C. 2945.59 provides:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."