JOURNAL ENTRY AND OPINION
The State of Ohio appeals from the order of the trial court granting defendant Willie A. Rick's motion to suppress. For the following reasons, we affirm the judgment of the trial court.
On February 24, 1999, the grand jury issued a three-count indictment charging defendant with possession of drugs, possessing criminal tools, and preparation of drugs for sale. At his arraignment on March 29, 1999, defendant entered a plea of not guilty to the charges set forth in the indictment.
On May 6, 1999, defendant effectively waived his constitutional right to a speedy trial. On the same date, defendant filed a motion to suppress evidence. On June 15, 1999, after retaining new counsel, appellant filed a second motion to suppress evidence.
The trial court commenced a suppression hearing on July 1, 1999. The state called Sergeant Charles Boddy of the Cleveland Police Department as its first witness. On August 25, 1998, Sergeant Boddy drove an unmarked car to the area near 12317 Superior Avenue in Cleveland, Ohio, to investigate complaints of drug activity.
When he arrived near the scene, Sergeant Boddy observed four males engaged in almost a dozen apparent drug transactions over five minutes. The suspects would flag down vehicles, reach into the vehicles as if they were giving something to the occupants and, in exchange, the occupants would give the suspects money. (Tr. 13.) Sergeant Boddy identified defendant as one of the suspects.
Sergeant Boddy observed defendant make at least four of the furtive transactions. Sergeant Boddy also observed defendant going in and out of a white Blazer that was parked in front of the restaurant. (Tr. 15.) After defendant made a transaction, he would reach inside the Blazer as if he was getting something or putting something in there. (Tr. 17.) Sergeant Boddy did not observe anyone else going in or out of the Blazer.
At this time, Sergeant Boddy contacted Officer Jones and his partner on the radio and provided them with a description of the suspects. When the other officers arrived in a marked car, the suspects dispersed in all directions. The officers detained the suspects and, after the situation was under control, Sergeant Boddy left the scene.
The state then called Cleveland Police Officer Kennedy B. Jones. On August 25, 1998, Officer Jones and his partner received a radio broadcast concerning drug activity near a restaurant at East 124th Street and Superior Avenue. The police department had received a complaint from a beauty shop across the street from the restaurant. The caller provided a description of the suspects.
On their way to the scene, Officer Jones and his partner were in radio contact with Sergeant Boddy. Sergeant Boddy confirmed the description of the suspects, including defendant who was wearing a white jumpsuit. When Officer Jones and his partner pulled up in uniform and in a marked vehicle, the suspects scattered. Defendant turned around and walked into the restaurant.
The officers rounded up the suspects and, for their safety, conducted a Terry search for weapons. During a pat down of defendant, Officer Jones found a knife in defendant's right front pocket. The officers then placed defendant and the other suspects in the zone car while they conducted warrant checks and further investigation. Although there was crack residue on defendant's knife, the officers did not place him under arrest at this time.
Officer Jones testified that the engine of the white Chevy Blazer was still running and that the radio was on loud. The officers asked all four suspects about the Blazer, and the suspects all denied ownership of the vehicle. According to Officer Jones, defendant continued to deny possession of the Blazer even after the officers informed him of their intention to tow the vehicle.
The officers determined that the Blazer was left unattended and, pursuant to police procedure, conducted an inventory search of the vehicle before having it towed off site. During the search of the Blazer, the officers found an open shaving kit containing crack cocaine and several pieces of mail addressed to defendant. At this time, the officers placed defendant under arrest.
After the state's exhibits were entered into evidence, the defense called its first witness, Richard G. Reynolds. Reynolds operated a restaurant in the area of the subject drug activity. Reynolds claims that defendant ordered some food thirty to forty minutes before he was arrested by the police. According to Reynolds, defendant was constantly checking on his order during this time. (Tr. 100.) Defendant waited outside the restaurant while Reynolds prepared his food. On cross-examination, Reynolds acknowledged that he did not have a view of defendant's activities while he was in the kitchen.
The defense then called Anthony Battle to testify at the suppression hearing. Battle testified that he and defendant had been friends since the seventh grade. Battle went to Brother Rick's Restaurant on the date in question. Battle contends that he waited approximately ten to fifteen minutes for his food. Battle claims that he did not see anyone waiving down cars while he was at the restaurant. According to Battle, the police searched and questioned him before he was allowed to leave.
Larry Edwards also testified for the defense. On the day in question, defendant picked up Edwards and they drove to Brother Rick's Restaurant for breakfast. Edwards testified that he placed an order, and then sat outside while he waited for his food. According to Edwards, defendant was not engaged in any drug activity during this time.
Defendant testified on his own behalf. Defendant claims that he and Edwards went to Brother Rick's Restaurant for breakfast. While defendant was waiting for his food, a police officer pulled him out of the restaurant. The officers searched defendant and placed him in the back of a police car with Edwards and another gentleman. According to defendant, the officers detained him in the back of the police car while they ran background checks and searched his girlfriend's Blazer. Defendant denied that the Blazer was running, but admitted that the keys were in the ignition and the windows were down so he and his friends could listen to the radio. Defendant claims that he told the officers it was his girlfriend's vehicle. Defendant testified that he did not know where the drugs came from, and could not explain the cocaine residue on his knife.
After both sides presented arguments, the court summarily stated:
 THE COURT: I believe there was an illegal detention. I am going to grant the defendant's motion.
In a journal entry filed on July 6, 1999, the trial court granted defendant's motion to suppress without explanation. Therefrom, the state filed a timely notice of appeal with this court.
 I. THE TRIAL COURT ERRED BY GRANTING THE SUPPRESSION OF EVIDENCE BASED UPON THE DETENTION OF THE DEFENDANT AS ILLEGAL.
In its first assignment of error, the state asserts that the trial court erred in granting defendant's motion to suppress evidence based upon the finding that there was an illegal detention.
An appellate court is bound to accept the trial court's factual findings, even when they are highly debatable, if they are supported by competent, credible evidence. See State v. Bays
(1999), 87 Ohio St.3d 15, 21. However, questions of law must be independentlydecided by this court without deference to the trial court's decision. See State v. Curry (1994), 95 Ohio App.3d 93,96.
Our review of this appeal has been impeded by the trial court's failure to provide Crim.R. 12(E) findings on the record. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record. Crim.R. 12(E) (emphasis added). The prosecutor compounded the trial court's mistake when he failed to request findings of fact from the trial court. In order to invoke Crim.R. 12(E) and preserve this procedural issue on appeal, an appellant must request that the court state its essential findings of fact in support of its suppression decision. See State v. Loza (1994), 71 Ohio St.3d 61,72-73, citing State v. Benner (1988), 40 Ohio St.3d 301, 317.
When viewed alone, the testimony of Sergeant Boddy and Officer Jones supports the conclusion that the police officers were justified in their initial Terry stop and frisk of defendant. Moreover, it was not necessarily improper for the police officers to detain defendant in the zone car while the officers continued their investigation. See U.S. v. Tilmon (C.A.7, 1994),19 F.3d 1221, 1128, citing Pliska v. City of Stevens Point (C.A.7, 1987),823 F.2d 1168, 1176-78; Thomas v. Newsome (C.A.11, 1987),821 F.2d 1550, 1554.
However, under the version of facts relayed to the trial court by defendant and his associates, the police officers would have lacked reasonable suspicion to detain defendant. We must presume that the trial court's decision was based upon this factual determination, as opposed to an erroneous legal conclusion. Although we may not necessarily agree with the trial court's factual findings, the evaluations of evidence and credibility of witnesses during suppression hearings are issues to be determined by the trial court. State v. Mills (1992), 62 Ohio St.3d 357, 366.
Based upon the foregoing, we overrule the state's first assignment of error.
 II. THE COURT ERRED BY ALLOWING THE DEFENDANT TO PROCEED WITH HIS MOTION TO SUPPRESS REGARDING THE EVIDENCE FOUND IN THE BLAZER BECAUSE HE LACKED STANDING TO RAISE THE ISSUE.
As for its second assignment of error, the state asserts that the trial court erred in suppressing the evidence found in the Blazer because defendant lacked standing to assert a privacy interest in the vehicle. The state insists that defendant relinquished any privacy interest in the vehicle when he denied possession of it.
As in its first assignment of error, the state's second argument is based upon the assumption that this court can accept the testimony of the prosecution witnesses and reject the version of events advanced by the defense. The trial court apparently believed the testimony of defendant over that of Officer Jones. In particular, defendant testified that he immediately informed the police officers that his girlfriend owned the Blazer. We must accept the trial court's factual determinations in this regard.
The state's second assignment of error is overruled. The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.