DECISION AND JUDGMENT ENTRY
{¶ 1} Melvin Kittle appeals his conviction on eight counts of rape from the Lucas County Court of Common Pleas. Because we conclude that any defect in the competency hearing of an eight year old witness was harmless error and because there was no prosecutorial misconduct or ineffective assistance of counsel, we affirm the conviction.
 {¶ 2} On August 21, 2001, a jury convicted Melvin Kittle of eight counts of rape, felonies of the first degree, violations of R.C.2907.02(A)(1)(b). The two witnesses against him were his two step-grandsons, D., eight years old, and R., eleven, who testified that Kittle made them perform fellatio on him several times when they visited his home between June and December 2000. Kittle was sentenced to six years on each count, four counts consecutive to each other, the others concurrent, for a total of 24 years incarceration. After a hearing, he was also classified as a sexual predator.
 Appellant's Assignments of Error {¶ 3} "1. The trial court committed error in finding that D.R. was competent to testify without determination that D. was capable of accurately perceiving and reporting events or that he knew the difference between truth and falsehood. (TR 11-15.)"
 {¶ 4} "2. Prosecutorial misconduct deprived Mr. Kittle of his rights to a fair trial with a reliable verdict. (TR 111-112, 245, 246, 248, 253, 255, 271-275.)"
 {¶ 5} "3. Mr. Kittle was denied the effective assistance of counsel."
 {¶ 6} "4. The court erred in imposing consecutive sentences."
 First Assignment of Error — Competency of Child Witness {¶ 7} Competency is defined in Evid.R. 601(A): "Every person is competent to be a witness except: * * * Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." See, also, R.C. 2317.01.
 {¶ 8} When this rule is applied to children, the Ohio Supreme Court explained: "In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful."State v. Frazier (1991), 61 Ohio St.3d 247, syllabus.
 {¶ 9} Kittle argues that the competency hearing of the child witness was improper because it incompletely addressed the Frazier
factors. Specifically, the court could not find that D. was capable of receiving and relating just impressions accurately nor find that he understood the difference between truth and falsity.
 {¶ 10} The competency hearing in this case was held by the trial court on August 20, 2001:
Court "And what's your name?"
Child "D. * * *"
Court "D. * * * What's your last name?"
Child "D.R. * * *"
Court "Okay. How old are you?"
Child "Eight."
 Court "Do you know when you will be nine? Do you know when your birthday is? Let me ask you another question. What grade are you in?"
Child "Uh, fifth."
Court "What grade are you in?"
Child "Second."
 Court "Second. All right. Okay. You'll be going back to school here pretty soon, going back to school?"
Child "(Witness nods.)"
Court "You have to answer yes or no."
Child "Yes."
 Court "Okay. Last year — did you like your school teacher that you had last year?"
Child "Yes."
Court "What school did you go to?"
Child "Glenwood."
Court "What's the name of that?"
Child "Glenwood School."
Court "Okay. And are you going to have the same teacher?"
Child "No."
Court "No. You're going to have a different one?"
Child "Yes."
Court "Do you know what her name will be? You don't know yet, huh?"
Child "(Witness nods.)"
 Court "Okay. But you're going to like her just like you liked your teacher last year; is that right?"
Child "Yes."
Court "You got any brothers or sisters?"
Child "Yes."
Court "You got both brothers and sisters?"
 Child "I got — I got two — three — there's three boys, two sisters and one dog."
Court "Whoa. What's the dog's name?"
Child "Champ — or Spot."
Court "Spot. You like him?"
Child "(Witness nods.)"
 Court "Okay. All right. Let me ask you this: You know we're going to give you an oath. We're going to have you raise your right hand, and we're going to ask you to promise to tell the truth and the whole truth. Do you think you can do that?"
Child "Yes."
 Court "And let's try that out. Let me have you raise your right hand."
Child "(Indicating)."
 Court "Okay. You promise that you're going to tell the truth and whole truth as you shall answer to God?"
Child "Uh-huh, yes."
Court "Okay. Do you know what happens if you don't tell the truth?"
Child "Uh — "
Court "Do you know what it means to tell a story or to tell a lie?"
Child "Wrong."
Court "What happens if you tell a story or tell a lie?"
Child "Uh, you could, uh, do bad things."
Court "Yeah. Okay. Do you think somebody might punish you?"
Child "Yes."
 Court "Have you ever — sometimes with your mother have you sometimes told her a little story or done something wrong?"
Child "Yes."
Court "Did she do something to you?"
Child "(Witness nods.)"
Court "What's that?"
Child "Spank us."
 Court "Oh. You got a spanking. You think maybe if you tell a story or tell a lie that you could get a spanking?"
Child "Yes."
Court "Do you go to church at all?"
Child "Yes."
Court "Oh, yeah. What church do you go to?"
Child "United."
Court "Do they tell you about God in church?"
Child "Yes."
Court "They tell you that God wants you to do good things?"
Child "Yes."
Court "Not tell lies?"
Child "Yes."
 Court "In some of your little teachings in church, have you ever heard that sometimes God might have to punish you if you're not doing right?"
Child "Yes."
 Court "Okay. Now we're going to ask you to testify or tell what happened in this case."
Child "Right."
 Court "And you're going to be truthful, you're going to tell nothing but the truth? Is that a yes?"
Child "Yes."
Court "Okay. Anything further?"
State "No, Your Honor."
Defense "No, Your Honor."
Court "Court finds the witness competent."
 {¶ 11} It is important to note that before finding the child witness competent, the court invited counsel to supplement his question. No one did so, nor registered any objection to the competency hearing. Usually a competency determination is to be reviewed under an abuse of discretion standard. State v. Wilson (1952), 156 Ohio St. 525, 532. Failure of a party to object, however, changes the appellate standard of review to that of "plain error." Crim.R. 52(B). State v. Ellis, Lucas App. No. L-00-1280, 2002-Ohio-1224. To prevail on a claim governed by the plain error standard, appellant must demonstrate that the trial outcome would have been clearly different but for the alleged errors. State v.Waddell (1996), 75 Ohio St.3d 163, 166. To state it otherwise, the defect must be obvious, affect substantial rights, and influence the trial's outcome.
 {¶ 12} Kittle now argues that the court did not ask questions about D.'s ability to receive accurate impressions, to communicate what was observed, or his understanding of the difference between truth and falsity. As such, he claims the Frazier requirements were not met. Questions asked on the issues of truth and falsity satisfied the trial judge that D. could understand the importance of telling the truth.[1]
Since the judge conducting the competency voir dire is in the best position to observe the child's demeanor and reactions, great deference must be afforded his opinion. State v. Lewis (1982), 4 Ohio App.3d 275,277. We agree with appellant that the questions asked relating to name, age, and grade in school all relate to D.'s ability "to recollect" but do not test the child's ability to accurately perceive. Responses to questions such as "Can you tell me how many people are in the room today?" or "What do you see on my desk?" are capable of immediate verification by the court and allow it to assess the potential witness's power of observation. The court should have asked at least one question to check the child's power of immediate observation.
 {¶ 13} A competency voir dire must be viewed in its entirety, however. State v. Purnell (Sept. 15, 2000), Lucas App. No. L-92-392. In Purnell, we upheld the trial court's competency determination because the five year old child made several accurate observations about the judge and his office and was able to name her school and teacher. To the question of the difference between the truth and a lie, she stated that it was better to tell the truth. We also upheld the competency finding inState v. Fleck (Sept. 3, 1999), Lucas App. No. L-98-1249. There, the child witness was asked on voir dire about her previous attendance at school and about what she had done on Thanksgiving, near the time of the alleged offense. In Fleck, the appellant did not challenge the child's ability to receive accurate impressions or relate them but disputed her understanding of consequences of telling a lie in court. She did answer "no" to the question "Is it OK to tell a lie?" Despite the fact that she was unable to answer a direct question about what would happen to her if she lied in court, she did say that she would be punished if she did not tell the truth. We found no abuse of discretion in the competency ruling.
 {¶ 14} Although the absence of any present perception question is obvious, we find that it was harmless error. If there had been an appropriate objection, the court could have easily asked a question similar to "what color is my tie?" We cannot say from the record that D. would not have been able to answer the missing Frazier questions or that a ruling of competency for this witness was plain error.
 {¶ 15} Appellant's first assignment of error is overruled.
Second Assignment of Error — Prosecutorial Misconduct
 {¶ 16} Kittle argues that the prosecutor repeatedly engaged in misconduct when expressing personal opinion and commenting about matters unsupported by the record. He cites to the record in several places during both opening statement and in closing arguments.[2] Many of the statements are proper argument; however, several should be specifically discussed.
 {¶ 17} First, Kittle argues that during opening statement, the prosecutor declared a personal belief in his guilt by stating: "[M]ost specifically [this case] is about the defendant who's molesting his two grandsons who were eight and ten years old at the time." Opening statements are not evidence but only a statement of what the prosecution intends to prove by the evidence to be presented. State v. Wilson, 1st Dist. No. C-000670, 2002-Ohio-1854. The prosecutor's remark improperly suggested guilt before evidence was even presented and could have been avoided with words such as: "the defendant who is charged with molesting his two grandsons." Even though there was no objection to this remark, the trial court had given an instruction on this point during its preliminary statement to the jury: "the trial will conclude with arguments of counsel, and arguments of counsel are just like opening statements. They're not evidence."
 {¶ 18} Because there were no objections to any of the prosecutor's comments Kittle is now raising, they are analyzed under the plain error rule. State v. LaMar (2002), 95 Ohio St.3d 181, 211, 2002-Ohio-2128. Plain error is found only in exceptional cases in order to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, at paragraph three of syllabus. Plain error will be recognized where but for the error, the outcome of the trial would have been different. Crim.R. 52(B); State v. Wogenstahl (1996), 75 Ohio St.3d 344, 357.
 {¶ 19} Second, Kittle contends that during the state's closing argument the prosecutor vouched for the credibility of witnesses and commented on facts not in evidence. We do not agree that the prosecutor's statements demand reversal. Prosecutors are entitled to latitude during closing arguments. State v. Brown (1988), 38 Ohio St.3d 305, 316. In commenting that the abuse the boys suffered at the hands of Kittle was "to be their little secret," or that the abuse was "a small price to pay in the minds of those two little boys for that attention," the prosecutor was arguing the circumstances of the case. This is proper closing argument. State v. Green (2000), 90 Ohio St.3d 352, 373-374.
 {¶ 20} The state may comment on "what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott
(1990), 51 Ohio St.3d 160, 165, citing State v. Stephens (1970),24 Ohio St.2d 76, 82. But prosecutors may not invade the realm of the jury by, for example, advancing their personal beliefs regarding guilt and credibility, or alluding to matters outside of the record. State v.Smith, 14 Ohio St.3d 13, 14. In two instances, however, the prosecutor extended her comments beyond the evidence: No expert testimony had been offered to support the prosecutor's claim that "these boys may never again feel comfortable with their own sexuality because of what happened to them over these six months" or that D.'s Attention Deficit Hyperactivity Disorder (ADHD) was "a learning disability, so he remembers what happened to him, but it's hard for him to remember details about it."
 {¶ 21} As noted, without an objection being registered, any purported misconduct is deemed waived unless it constitutes plain error. Crim.R. 52(B); State v. Wickline (1990), 50 Ohio St.3d 114, 119-120. A claimed irregularity in the proceedings will not be deemed as plain error unless it constitutes a manifest miscarriage of justice that clearly affects the outcome of the trial. State v. Hill (2001), 92 Ohio St.3d 191, at syllabus.
 {¶ 22} The trial judge admonished the jury that opening statements and closing arguments were not evidence on three separate occasions: before opening statements, before closing arguments, and during jury instructions. While it is arguable that the state was overzealous in these comments, these remarks differ in nature from three other cases where we reversed.[3] In State v. Burke (May 12, 2000), Lucas App. No. L-98-1166, the prosecutor attempted to inflame the emotions of the jury when he stated: "If you don't think that we proved our case beyond a reasonable doubt, let him go out the doors. But look over your shoulder if you do." Defense counsel had objected to this remark. In State v.Masing, Ottawa App. Nos. OT-01-022, OT-01-032, 2002-Ohio-1873, we reversed when the prosecutor asserted that a witness was truthful. The trial court did not give any cautionary instruction to the jury to disregard the improper statements. In State v. Purley, Lucas App. No. L-01-1005, 2002-Ohio-2689, at ¶ 33-35, we reversed on grounds of prosecutorial misconduct where the prosecutor expressed his personal belief about witness credibility a number of times, using words such as "I think" and "I know." In addition, there were disparaging remarks about the defense and gestures leading to the belief that other defendants had participated in crimes for which they were not prosecuted, all of which were the subject a motion for mistrial. The defense objected to several of the offending comments at the time, but the court overruled the objections and gave no curative instruction.
 {¶ 23} The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Smith v. Phillips (1982), 455 U.S. 209, 219. An accused is guaranteed a fair trial, not a perfect one. Schneble v.Florida (1972), 405 U.S. 427, 432.
 {¶ 24} In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine beyond a reasonable doubt whether, absent the improper questions or remarks, the jury would have found the appellant guilty. State v. Maurer (1984), 15 Ohio St.3d 239,266-267; State v. Dixon (Mar. 13, 1997), Cuyahoga App. No. 68338. Here, both D. and R. testified that Kittle would take them into the bedroom and make them perform fellatio on him numerous times. They stated what the discharge tasted like; D. even described it as "salty." R. and D. also stated how they watched each other perform fellatio on Kittle. They also testified how they went to the hospital to be examined after they told their mother about what had happened, and those medical records were entered into evidence.
 {¶ 25} Viewing the closing argument as a whole, we cannot conclude that the prosecutor's remarks in this case crossed the line that "separates permissible fervor from a denial of a fair trial." State v.Keenan (1993), 66 Ohio St.3d 402, 409. We also cannot say, in light of the evidence, that but for the prosecutor's remarks the jury would have acquitted Kittle. We, therefore, overrule the second assignment of error.
Third Assignment of Error — Ineffective Assistance of Counsel
 {¶ 26} In his third assignment of error, Kittle contends that his trial counsel rendered ineffective assistance of counsel. He asserts that his counsel was ineffective because he failed to object to the flawed competency examination or to any of the instances of prosecutorial misconduct.
 {¶ 27} Kittle bears the burden of proving that his counsel was ineffective since an attorney is presumed competent. Strickland v.Washington (1984), 466 U.S. 668, 687-689; Lott, supra, at 174. To meet this burden of proof, appellant must show that: (1) there was a substantial violation of the attorney's duty to his client, and (2) the defense was prejudiced by the attorney's actions or breach of duty.Strickland, supra; State v. Smith (1985), 17 Ohio St.3d 98, 100. Prejudice is shown where there is a reasonable probability that a different result would have occurred in the case if the attorney had not erred. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of syllabus; State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 108.
 {¶ 28} As was already discussed, alleged deficiencies in the competency hearing were harmless error; the prosecutors' statements, arguably although overly zealous, did not alter the outcome of this case. Even if counsel should have objected, it is not likely that Kittle would have been acquitted based upon the evidence against him.
 {¶ 29} In discussing the issue of attorney competence, the Ohio Supreme Court observed: "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citations omitted] * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' [Citations omitted]" Frazier, supra, at 253.
 {¶ 30} This presumption means that a great amount of deference must be given to counsel's trial strategy. State v. Carter (1995),72 Ohio St.3d 545, 558. We are not to second-guess. Even a questionable trial strategy does not compel a finding of ineffective assistance of counsel. State v. Smith (2000), 89 Ohio St.3d 323, 328; State v. Clayton
(1980), 62 Ohio St.2d 45, 49.
 {¶ 31} We conclude that failure to object to the competency hearing and the prosecutor's statements, even if deemed inappropriate, did not result in prejudicial error. State v. Carpenter (1996),116 Ohio App.3d 615, 621-622. Therefore, appellant's third assignment of error is overruled.
Fourth Assignment of Error — Improper Consecutive Sentence
 {¶ 32} The standard for consecutive sentencing is specified in R.C. 2929.14(E)(4).[4] The trial court, however, did follow the mandate of R.C. 2929.14(E)(4) when it imposed consecutive sentences for four counts of rape, violations of R.C. 2907.02(A)(1)(b). Kittle, however, alleges in his fourth assignment of error that the trial judge did not give the proper reasons under R.C. 2929.19(B)(2)(c)[5] during the sentencing hearing when he imposed consecutive sentences. He also claims the judgment entry was insufficient.
 {¶ 33} Recently, this Court specified what a trial court was required to do when rendering consecutive sentences in State v.Blackmun, 6th Dist. No. L-01-1349, 2003-Ohio-2216, at ¶ 8: "In this court's jurisdiction, the sentencing court may articulate its finding and reasons orally at the sentencing hearing or in its judgment entry on sentencing. State v. Parks, 6th Dist. No. L-02-1180, 2003-Ohio-1624, at ¶ 18; State v. Windham, 6th Dist No. E-01-015, 2003-Ohio-305, at ¶ 36; State v. Comer, 6th Dist. No. L-99-1296, 2002-Ohio-233, motion to certify record granted, 95 Ohio St.3d 1472, 2002-Ohio-2444." See, also, State v. Townsend, 6th Dist. No. L-02-1232, 2003-Ohio-2913, at ¶ 20-21. Here, the judgment entry has the appropriate findings: "The sentences are ordered to be served consecutively to one another. Being [sic] necessary to fulfill the purpose of R.C. 2929.11, and not disproportionate to the seriousness of the offender's conduct or the danger of the offender poses and the Court FURTHER FINDS: the harm caused was great or unusual; defendant's criminal history requires consecutive sentences." Therefore, appellant's fourth assignment of error is overruled.
 {¶ 34} Because substantial justice was done to appellant, Melvin Kittle, all four assignments of error are overruled, and the judgment of the trial court is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
Peter M. Handwork, P.J., Richard W. Knepper, J., and Judith Ann Lanzinger, J.
[1] Kittle argues that the response "wrong" to the question of what it meant "to tell a story or to tell a lie" was not responsive. Once again, the hearing must be viewed as a whole. This single question and answer was but part of a series where the trial judge explored whether D. would tell the truth at trial.
[2] The statements are:
 • "[this case] is about the defendant who's molesting his two grandsons who were eight and ten years old at the time."
 • "The truth is more than eight times, at least 20 times this man molested and raped two little boys,"
 • "Now, the boys didn't say the same thing. They didn't describe it the same way. They experienced things, and they said what happened."
 • "You're duty bound to follow the law. You must find this man guilty of eight counts of rape on children under the age of 13,"
 • "Makes no sense. You can't make sense out of a senseless act. That's the key. Don't try to make sense out of this."
 • "It's peculiar that he never wanted a little peace and quiet and that he always wanted two little boys over at the house. That's peculiar. And it's criminal."
• "[It] was to be their little secret,"
 • "little indiscretions that happened in the bedroom every weekend were a small price to pay in the minds of those two little boys for * * * attention."
 • "D. has a learning disability, so he remembers what happened to him, but it's hard for him to remember the details about it,"
 • "[T]he boys may never again feel comfortable with their own sexuality because of what happened to them over these six months."
 • "They went home and forgot about it. In fact, after they walked out of the bedroom they forgot about it."
[3] State v. Purley, Lucas App. No. L-01-1005, 2002-Ohio-2689, at ¶ 33; State v. Masing, Ottawa App. Nos. OT-01-022, OT-01-032, 2002-Ohio-1873; State v. Burke (May 12, 2000), Lucas App. No. L-98-1166. Cf. State v. Macias (June 8, 2001), Lucas App. No. L-99-1363; State v.Butler (Aug. 11, 2000), Lucas App. Nos. L-99-1177, L-99-1178; State v.Owens (1998), 127 Ohio App.3d 65, 67-69. See, also, DR 7-106(C).
[4] Ohio Revised Code § 2929.14(E)(4) provides:
"If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following: "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense. "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct. "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
[5] R.C. 2929.19(B)(2)(c) provides:
"The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances: * * * If it imposes consecutive sentences under section2929.14 of the Revised Code, its reasons for imposing the consecutive sentences."