The STATE of Ohio, Appellee,

v.

OWENS, Appellant.

[Cite as *State v. Owens* (1998), 127 Ohio App.3d 65.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–96–101.

Decided March 31, 1998.

*Julia R. Bates,* Lucas County Prosecuting Attorney, and *Michael C. Mota,* Assistant Prosecuting Attorney, for appellee.

*Jeffrey M. Gamso,* for appellant.

SHERCK, Judge.

This appeal comes to us from the Lucas County Court of Common Pleas, where a jury found appellant guilty on four counts of aggravated trafficking in drugs. Because the trial court erred in denying appellant's motion to dismiss for prosecutorial misconduct, we reverse.

On September 14, 1995, the Lucas County Grand Jury indicted appellant, Gerald Lamar Owens, for aggravated drug trafficking, in violation of R.C. 2925.03(A)(1). Appellant, a police officer with ten years of service in the University of Toledo's police department, was accused of selling crack cocaine to an undercover Toledo police officer. A paid, confidential informant was allegedly involved in all four drug transactions. Appellant entered a plea of not guilty and moved for disclosure of the identity of the informant.

On October 24, 1995, the trial court conducted a hearing on the motion for disclosure. Appellant argued that because he planned to assert the defense of mistaken identity, it was essential for him to learn the identity of and investigate the circumstances surrounding the informant. The court then heard *in camera* testimony from the prosecutor's office that opposed disclosure, claiming concern for the informant's safety and arguing that the informant's actual participation in the transactions was minimal. Based on this testimony, the trial court denied appellant's motion for disclosure of the informant's identity.

On January 30, 1996, appellant's jury trial began. During the opening statement to the jury, the prosecution suddenly disclosed the identity of the police informant, despite its earlier opposition to disclosure. Appellant objected, alleging prosecutorial misconduct, and moved for a dismissal with prejudice. On February 6, 1996, the trial court denied appellant's motion for discharge. Instead, the court *sua sponte* declared a mistrial, adding that its decision was "not based upon the prosecutor goading the defense into asking for a mistrial." Appellant objected to the ordering of a mistrial, asserting that absent a discharge, he wished to proceed with the trial as scheduled.

On March 26, 1996, the second trial began. Both parties presented evidence and testimony as to the alleged drug transactions. On March 31, 1996, the jury returned guilty verdicts on all four counts of aggravated trafficking in drugs. The trial court sentenced appellant to one and one-half years on each count to be served concurrently and fined appellant $2,500. On May 30, 1996, the court granted appellant's previously filed motion for shock probation.

Appellant now appeals, setting forth the following five assignments of error:

"First Assignment of Error

"The trial court erred in refusing to permit questions of witness Tracy Tatum which he intended not to answer on the basis that they might tend to incriminate him.

"Second Assignment of Error

"The trial court erred in refusing appellant's motion to admit polygraph testimony.

"Third Assignment of Error

"The trial court erred in refusing to dismiss the case with prejudice and, instead, *sua sponte* ordering a mistrial without reaching the question of whether the mistrial was forced by prosecutorial misconduct and, therefore, the protections of the Double Jeopardy Clauses of the federal and state constitutions precluded a retrial.

"Fourth Assignment of Error

"Insofar as the issues raised in the first and third assignments of error were not adequately preserved, appellant received ineffective assistance of trial counsel.

"Fifth Assignment of Error

"The trial court erred in sustaining objections to the length of punishment appellant's witnesses could face for not cooperating with the police."

We immediately turn our attention to appellant's third assignment of error, in which he argues that the trial court erred in declaring a mistrial rather than dismissing the case with prejudice. Appellant maintains that the mistrial was, in fact, caused by prosecutorial misconduct and that the protections of the Double Jeopardy Clauses of the federal and state Constitutions preclude a retrial.

■ The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects a criminal defendant from repeated prosecutions for the same offense. *Oregon v. Kennedy* (1982), 456 U.S. 667, 671, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416, 421–422. The reasons behind the prohibition against double jeopardy are that "the State, with all its resources and power, should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent, he may be found guilty." *Green v. United States* (1957), 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204. See, also, *United States v. Scott* (1978), 437 U.S. 82, 87, 98 S.Ct. 2187, 2191–2192, 57 L.Ed.2d 65, 71–72. As part of the protections against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant the right to have his trial completed by a particular tribunal. *Oregon v. Kennedy, supra,* at 671–672, 102 S.Ct. at 2087–2088, 72 L.Ed.2d at 421–422; *Arizona v. Washington* (1978), 434 U.S. 497, 503–504, 98 S.Ct. 824, 829–830, 54 L.Ed.2d 717, 726–727.

■ Nonetheless, this right is not absolute. A trial court may declare a mistrial and proceed with a second trial where there is a "manifest necessity of ordering the mistrial" or where the "ends of public justice would otherwise be defeated." *State v. Widner* (1981), 68 Ohio St.2d 188, 189, 22 O.O.3d 430, 431, 429 N.E.2d 1065, 1066, citing *Arizona v. Washington, supra.* When a trial court "*sua sponte* declares a mistrial, double jeopardy does not bar retrial unless the judge's action was instigated by prosecutorial misconduct designed to provoke a mistrial, or the declaration of a mistrial constituted an abuse of discretion." *State v. Glover* (1988), 35 Ohio St.3d 18, 517 N.E.2d 900, syllabus. See, also, *State v. Loza* (1994), 71 Ohio St.3d 61, 70, 641 N.E.2d 1082, 1096–1097, citing *Oregon v. Kennedy, supra,* 456 U.S. at 678–679, 102 S.Ct. at 2090–2092, 72 L.Ed.2d at 426–

427, and *State v. Doherty* (1984), 20 Ohio App.3d 275, 20 OBR 338, 485 N.E.2d 783 (retrial barred if mistrial due to prosecutorial misconduct that was "intentionally calculated to cause or invite a mistrial"). For purposes of review on appeal, a trial court's characterization of its own action cannot control the classification of the prosecutorial conduct. *United States v. Scott* (1978), 437 U.S. 82, 87, 98 S.Ct. 2187, 2191–2192, 57 L.Ed.2d 65, 71–72; *United States v. Jorn* (1971), 400 U.S. 470, 478, 91 S.Ct. 547, 553, 27 L.Ed.2d 543, 552, fn. 7.

The case before us represents a classic conflict of rights: on one hand, the right of an accused to be tried by his chosen tribunal; on the other, the public's right to have criminal matters justly tried to a conclusion. The Supreme Court of Ohio dealt with this conflict in *Glover* and ruled in favor of society's interests by concluding that a *sua sponte* declared mistrial does not result in double jeopardy. However, the Supreme Court, in the syllabus of *Glover*, created two separate exceptions to this rule: one, prosecutorial misconduct designed to provoke a mistrial, and two, an abuse of discretion by the trial court in declaring a mistrial.

We conclude that under either of the *Glover* exceptions appellant's conviction must be reversed and appellant discharged.

■ In this case, more than three months after vigorously fighting and winning the right to keep secret the informant's identity, the prosecution, intentionally and without prior notice to appellant, made the following comments in opening statement:

"And we will hear testimony that Mr. Owens, Mr. Gerald Lamar Owens, has a cousin. Guess what his name is? Gerald Norman Owens. And I will tell you that testimony's going to show that Gerald Norman Owens—and we'll show you a picture of Gerald Norman Owens—is the informant in this case. And the testimony is going to show that the detectives worked with Gerald Norman Owens, who has the nickname of Cat Eyes, and that in working with him for several weeks, they know Gerald Norman Owens and they know this man, Gerald Lamar Owens."

In our view, the prosecutor's actions illustrate the exact type of misconduct that is calculated to provoke or invite a mistrial. Rather than a misstatement or an inadvertent disclosure, the prosecution's remarks were deliberately presented as part of its theory of the case. As a result of this misconduct, appellant was forced either to request a mistrial (depriving him of his right to continue with his chosen tribunal) or to proceed with the trial without having investigated the alleged informant's testimony or involvement (depriving him of his right to examine the involvement of a key player whose identity was now before the jury). When the court refused appellant's motion to dismiss the case with prejudice,

appellant elected to continue with the trial. The court, in effect, overruled appellant's decision by then granting a mistrial. Since the judge's actions were instigated by prosecutorial misconduct designed to provoke a mistrial, double jeopardy attaches.

In addition, the court abused its discretion under the alternate *Glover* exception. In this case, the actual prejudice that occurred was to appellant's ability to prepare a defense, rather than to the jury's perception of the case. Therefore, rather than ordering a mistrial, the trial court could have granted a sufficient continuance to allow appellant to adjust his defense, to locate and interview the paid informant, and to issue a subpoena, if necessary.[1] Additionally, since the jury would have been unaware of the reason for the continuance, any possible prejudicial effect could have been minimized or eliminated by a simple jury instruction.

Therefore, we conclude that the trial court erred in denying appellant's motion to dismiss on double jeopardy grounds and abused its discretion in granting a mistrial.

Accordingly, appellant's third assignment of error is well taken.

Our disposition of the third assignment of error renders appellant's remaining assignments of error moot.[2]

---

1. We note that at the hearing regarding appellant's motion to dismiss, the trial court heard an audiotape of a phone conversation between the alleged informant and a private investigator for the defense. This tape suggests that the police allegedly told the informant to "get out of town" during the pendency of the trial so that appellant could be convicted.

2. While it is not relevant to our decision, we are nevertheless compelled to comment on the dubious state of the evidence presented at the second trial. In that trial, two vice-squad officers of the Toledo Police Department testified to appellant's involvement in the alleged drug transactions. Appellant's presence at the drug scene was confirmed by a third officer. This testimony, however, was it direct conflict with the testimony given by the paid, confidential informant, who denied that appellant was in any way involved in the sales. It was also in direct conflict with appellant's testimony, and a codefendant in one of the sales. That codefendant turned down an offer to recommend probation and an agreement not to prosecute his mother, who was suffering from AIDS, for favorable testimony—opting instead to face multiple felony counts. Also, the resident of the house where the alleged deals occurred denied ever seeing appellant and took the Fifth Amendment out of the presence of the jury when asked if he was the one who sold the drugs.

   In addition, the officers' testimony is, at least, indirectly in conflict with the testimony of a University of Toledo police officer who witnessed the vice-squad officer's identification of appellant (the vice-squad was working off of a photograph of appellant), two regular Toledo police officers who routinely patrolled the neighborhood where the alleged sales occurred, and a security worker for the University of Toledo who placed appellant on duty at the Glass Bowl parking lot at the approximate time the first sale took place.

The judgment of the Lucas County Court of Common Pleas is reversed, and defendant is ordered discharged. Court costs of this appeal are assessed to appellee.

*Judgment reversed.*

HANDWORK, P.J., concurs.

GLASSER, J., dissents.

GLASSER, Judge, dissenting.

I disagree with the majority opinion that the trial court erred by denying appellant's motion to dismiss for prosecutorial misconduct and by subsequently declaring a mistrial as set forth in the third assignment of error.

The opinion cites *State v. Glover, supra,* in which a trial court *sua sponte* declared a mistrial. In *Glover,* the Ohio Supreme Court stated that double jeopardy does not bar retrial unless the judge's action was instigated by prosecutorial misconduct designed to provoke a mistrial, or the declaration of a mistrial constituted an abuse of discretion by the trial court.

Neither of the conditions enumerated in *Glover* is present in this case. The prosecutor's action in revealing the identity of the confidential informant in opening statement after persuading the trial court, about three months before trial, to issue a pretrial order maintaining the confidentiality of the informant because of concern for his security does not constitute prosecutorial misconduct designed to provoke a mistrial under the circumstances of this case.

Without expressing any conclusion as to the judgment of the prosecutor in dealing with the situation involving similarities in name and appearance between appellant and the informant, it is obvious that the prosecutor had a substantial concern for the possibility of confusion being created in the minds of the jurors in this case. It does not appear that the prosecutor's action was designed to provoke a mistrial, but that he was attempting to pursue a trial strategy to reduce the possibility of such confusion by acknowledging these existing similarities in opening statement.

I further disagree with the majority's conclusion that the trial court abused its discretion in *sua sponte* declaring a mistrial. After the identity of the confidential informant was revealed by the prosecutor, opening statements were completed and the testimony of some witnesses was presented before defense counsel moved for dismissal of the case with prejudice. The trial court denied that motion and recessed the trial to provide the defense with the opportunity to locate and subpoena the informant. When the option of continuing the trial with

the same jury ultimately proved not to be feasible, then the trial court ordered a mistrial in this matter over the objection of defense counsel.

Unlike *Glover,* here the trial court had a substantial and logical basis for *sua sponte* declaring a mistrial. In applying the established definition of "abuse of discretion" to the facts and circumstances of this case, I do not agree that the trial court abused its discretion in denying appellant's motion to dismiss for prosecutorial misconduct. Therefore, I would not find appellant's third assignment of error well taken, and I would affirm the trial court.