[Cite as *State v. Ashford*, 2023-Ohio-3139.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No.  L-22-1296
                                                                      L-22-1299
              Appellee
                                                 Trial Court No.  CR0202101808
                                                                  CR0202101808
v.

Marcus Ashford                                   **DECISION AND JUDGMENT**

and                                              Decided:  September 1, 2023

Jamarr Hayward Jr.

              Appellants

* * * * *

Julia R. Bates, Lucas Count Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Joseph W. Westmeyer, III, for appellant, Marcus Ashford.

Ronnie L Wingate, for appellant, Jamarr Hayward, Jr.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} In this consolidated appeal, appellants Marcus Ashford and Jamarr Hayward,

Jr. appeal the judgment of the Lucas County Court of Common Pleas, denying their

respective motions to dismiss their indictments, after mistrial, based on double jeopardy. For the reasons that follow, we affirm the trial court's judgment.

## II. Facts and Procedural Background

{¶ 2} On June 7, 2021, appellants were indicted as co-defendants in a two-count indictment, alleging in count one: attempt to commit murder in violation of R.C. 2923.02 and 2903.02(A) and 2929.02, a felony of the first degree; and in count two: felonious assault in violation of R.C. 2903.11(A)(2) and (D), a felony of the second degree. Each count included a firearm specification pursuant to R.C. 2941.145(A),(B),(C), and (F).

{¶ 3} Appellant's each appeared for arraignment and entered pleas of not guilty to the charges. Both Ashford and Hayward filed immediate motions for discovery, and the state of Ohio filed its discovery response and supplemental responses on June 28, 29, August 20, 27, and November 2, 2021.

{¶ 4} On August 23, 2021, Hayward filed a motion to supplement discovery, requesting a color copy of the photo arrays shown to the identifying witnesses. On that same date, Hayward filed a motion to suppress the identification, arguing the police used an unduly suggestive photo array. On November 2, 2021, Ashford filed his own motion to suppress the identification, challenging the photo array as unduly suggestive. The trial court held separate hearings on the motions. On December 8, 2021, the trial court denied Ashford's motion to suppress. On April 12, 2022, the trial court denied Hayward's motion to suppress.

2.

**{¶ 5}** In March 2022, a new prosecutor appeared, replacing the original prosecutor assigned to the case. The state continued to file supplemental discovery, with notice of supplemental discovery filed April 21 and June 28, 2022.

**{¶ 6}** On July 1, 2022, the state requested a continuance of the trial scheduled for July 5, 2022. The state indicated witnesses would not be available that week, and the prosecutor had also just served discovery on the defense, with the potential for additional discovery to follow. Appellants each objected to continuance, through their respective trial counsel, and asked that the continuance be counted as time requested by the state for speedy trial purposes. The trial court granted the continuance, with the time charged to the state. The trial court scheduled a new trial date of August 30, 2022.

**{¶ 7}** On August 16, 2022, the state filed a notice of supplemental discovery. As indicated by subsequent statements on the record, the prosecutor placed the discovery in a tray at their office for the defense to retrieve, per the usual practice of the prosecutor's office. The discovery included a recording of conversation between the alleged victim and Detective Heban, and consisted of discussion between the alleged victim, acting as a confidential informant, and Heban in which the alleged victim identified Ashford and Hayward relative to a 2019 burglary.[1]

---

[1] The recording is not part of the record on appeal. The description of the recording is based on the prosecutor's representations to the trial court in the state's response, filed November 1, 2022, to the motions to dismiss.

3.

{¶ 8} On August 19, 2022, the trial court held a status pretrial, and at the request of all parties, confirmed the trial date. There was no mention of the recently produced supplemental discovery at this pretrial.

{¶ 9} On August 30, 2022, trial began. In the midst of voir dire, out of the presence of the venire, an issue arose regarding discovery. Appellants' trial counsel informed the trial court that the prosecutor produced a recording to the defense in the supplemental discovery of August 16, that indicated the alleged victim in the case was a confidential informant for a Detective Heban, beginning in 2015 or 2016 until the present. Detective Heban was not involved in the investigation leading to the current charges against appellants.

{¶ 10} Appellants argued that the alleged victim's interactions with Detective Heban and other police officers might be relevant at trial, including whether the alleged victim had charges resolved in exchange for his cooperation as an informant. Appellants' trial counsel believed the recordings suggested the state had additional information that might be exculpatory or that could be used to impeach the alleged victim on cross-examination. Appellants requested documents or other discovery regarding the alleged victim's arrangement with police, but the prosecutor indicated there were no documents or other records kept for confidential informants.

{¶ 11} Despite the lack of documents or other records, appellants contended that the state should have provided information regarding work the alleged victim did for the state as part of discovery. The prosecutor disagreed, and argued that the state had

4.

provided the alleged victim's prior record, and "it is not relevant whether or not he has cooperated with vice in any other cases." The prosecutor further argued:

> So, therefore, it is not relevant whether or not he has helped get other drug dealers off of the street because we're not talking drugs here. We're talking about whether or not these two individuals shot and tried to kill him.

In an attempt to resolve the dispute, the trial court held discussion with counsel in chambers. The trial court memorialized the result of that discussion as follows:

> THE COURT: All right. We had a conversation in chambers about an additional request for information regarding some discovery, and the way we're going to resolve that is I believed the alleged victim is not going to be called today, but the State will call the alleged victim tomorrow; is that correct?
>
> [Prosecutor]: That's correct. Detective Fisher will not be here for voir dire. I've asked him to go get that information the defense has requested.

The defense, when asked, had nothing to add to the trial court's proposed resolution and did not otherwise place any issues on the record, relative to the proposed resolution articulated by the trial court.

{¶ 12} In the midst of voir dire, before the jury was seated, the trial court took breaks from jury selection and met with counsel out of hearing of the venire, to address Detective Heban's possible connection. First, the prosecutor indicated that Heban first

came into contact with the alleged victim in 2015 or 2016. Later, in another bench conference, the prosecutor raised the issue of Detective Heban, once more, indicating she "would just finish my thought." The prosecutor continued to argue that the fact the alleged victim worked with Detective Heban as a confidential informant was not relevant. The prosecutor maintained:

As I indicated, [the alleged victim] was reliable. This is not a search warrant issue. It's whether or not he was – these gentlemen shot him and tried to kill him or not. It has nothing to do with whether or not he was an informant with the police.

{¶ 13} Appellants' trial counsel disagreed, arguing statements the alleged victim made the night of the incident to officers might be relevant. Trial counsel also argued that, without discovery, they would not be able to effectively cross-examine the alleged victim about his work with Detective Heban, including charges the alleged victim may have had that were reduced or dismissed based on his cooperation with police, prior to the incident. Based upon the information provided by the state in the supplemental discovery of August 16, appellants' trial counsel argued that the alleged victim might have been still working with Detective Heban on the date of the incident that resulted in appellants' respective charges.

{¶ 14} The trial court took the matter under advisement before recessing for lunch, and the record reveals the proceedings resumed in chambers, with the trial court placing the following on the record after reconvening:

6.

Conversation was held in chambers about the issue regarding the alleged victim's alleged cooperation with police. My suggestion has been to allow for the deposition of the detective before the victim is called to avoid potential prejudice on behalf of the defendants. I am not specifically ruling on the relevance issue yet. [The prosecutor] indicated off the record that she has made contact with the detective and he's discussing the matter with his sergeant. So I think this [is] to be continued for the time being, and let's continue with voir dire, and we'll address this issue again at the end of the day.

At the end of the day, the following exchange occurred in chambers:

THE COURT: We're in chambers outside the presence of the jury. The state has indicated that the detective that worked with the alleged victim as a confidential informant is talking to his supervisor. State would like defense to file a motion cause they're not clear as to what is being asked. I raised the issue of potentially subpoenaing the detective. My thought at this time is we seat the jury, do openings, and, defense, you can file – work out a motion tonight and file it in the morning or if you want to –

[Trial Counsel]: We'll issue a subpoena. There's no need for us to file a motion if we issue [a] subpoena. He has to show up.

THE COURT: Okay.

[Trial Counsel]: And if you're talking about depositions, then we can ask the questions.

THE COURT: Okay. If you're going to issue a subpoena, you can get that done tonight, file it first thing in the morning. We're not going to start till at the earliest 10 a.m. So, that may be, and then I guess you've got – if you want to argue, move to quash it or something, then we can have that argument tomorrow morning before we bring the jurors in.

[Trial Counsel]: Is he going to be available to be served? I don't want to go through this and then he's not available cause he's not in town or he's not –

[Prosecutor]: I didn't even ask him. I think he is in town.

THE COURT: That doesn't sound like that's the issue.

[Trial Counsel]: Not yet.

THE COURT: Fair enough. Anything more we need to say on this issue?

[Prosecutor]: No, Judge. I am objecting for the record as to subpoenaing the detective, bring him in, doing a deposition. I don't think that it's relevant.

THE COURT: Understood. And I again am reserving my decision on the relevance issue.

[Trial Counsel]: If he is – and this is inquiry. If we serve Detective Fisher, could he get him the subpoena, since I think –

[Prosecutor]: Is he your process server?

[Trial Counsel]: I thought out of courtesy. I didn't know we had to fight for this.

[Prosecutor]: You could ask him.

[Trial Counsel]: Well, I'm asking you. He's your agent, your detective.

THE COURT: I'm inclined to assist the defense in getting this deposition done. The disk was handed over late. He was out of town. I'm trying to be as fair as I possibly can. So I would appreciate if the state would assist in producing this witness for deposition. It may end up not being relevant. But it seems to me like to create a good record and to avoid prejudice the defendants at least producing the testimony in some form is the prudent thing to do. Again, I haven't ruled on the admissibility. I haven't ruled on the relevance. But I would just like to make a good record, and I think producing this witness to allow for the deposition creates that record. Whether it's admissible or not we can deal with that at a later time.

[Prosecutor]: I will contact him and see if he can be here tomorrow. I will ask him to be here. They're going to be issuing a subpoena to him.

THE COURT: Thank you.

9.

[Trial Counsel]: Thank you.

The trial court then continued with jury selection, and the jury was seated and sworn.

{¶ 15} Prior to breaking for the day, the parties returned to discussion of deposing Detective Heban.

THE COURT: On the record. We are outside the presence of the jury. Go ahead.

[Trial Counsel]: Yes, your honor. I inquired, asked to approach the Court relative to an inquiry which had to do with the status of [the alleged victim] being a confidential informant or snitch. The question that was to be raised was whether or not I could broach that subject in my opening statement. The reason I wanted to know with some type of certainty had to do with the fact that we intend to have the detective here tomorrow morning hopefully for the purposes of a deposition to inquire of the subject matter as relates to [the alleged victim]. I did not want to conduct my opening statement and use information that will not be substantiated by testimony from the witness stand, and so with that being said, I respectfully ask the Court to continue the opening statements until tomorrow morning.

[Prosecutor]: That's fine, Judge.

THE COURT: Okay. And the state's going to work on producing the detective so this deposition can happen?

[Prosecutor]: Yes.

THE COURT: Okay. And are you going to need – I'm going to be in docket tomorrow morning. So are you going to be able to get a court reporter, figure that out on your own, or you going to need –

(Whereupon, a discussion was held off the record)

THE COURT: Okay. An off-the-record conversation was held. I believe I'll be able to use a JAVS tech tomorrow morning which would free up [the court reporter] to do the deposition of the detective at 9. Maybe you can use another courtroom, obviously, so there's no run-in with our jurors. Anything else?

[Trial Counsel]: No.

The trial court went on the record one more time before adjourning for the day, and addressed whether the defendants should be present for the deposition. Appellant's trial counsel waived their respective client's presence, and the trial court ruled that the deposition transcript would be designated for counsel only.

{¶ 16} On August 31, 2022, the matter resumed, and the trial court once more memorialized conversations held off the record in the following exchange:

THE COURT: All right. On the record. Extensive conversations have been held off the record. In a nutshell, there was some potentially exculpatory evidence that [trial counsel] has identified that he received notice of two weeks ago?

[Trial Counsel]: Yes.

11.

[Prosecutor]: Judge, we put it in 8-16 is when we provided the discovery to defense.

THE COURT: Okay. All right. Had – I don't want to put words in your mouth, [trial counsel], but had you received it earlier you probably would have followed up with a motion to explore receiving more exculpatory evidence; is that correct?

[Trial Counsel]: That is correct.

THE COURT: Okay. The potential exculpatory evidence raises a potential issue for the state as well regarding a motion in limine; is that correct State?

[Prosecutor]: Yes, Judge.

THE COURT: So because of this issue, I'm inclined to believe that this case is not ready to be tried, and I'm considering a mistrial, declaring a mistrial and resetting the trial date. * * *

{¶ 17} Although the trial court expressed a desire to declare a mistrial, the state argued against a mistrial, indicating readiness to proceed to trial and arguing the information sought by the defense from Detective Heban was not relevant to trial. However, the state also indicated the trial court had discretion to declare a mistrial "if the defense feels they need to look further into any other matters related to that disk that we provided." The prosecutor stated that her office "met our obligation" relative to

12.

discovery and intended to file a motion in limine to prohibit "mentioning any of that material that we discussed in chambers."[2]

{¶ 18} In response, trial counsel argued that the prosecutor's account, while accurate, ignored the fact that the state produced a disk containing potentially exculpatory evidence two weeks before trial. Furthermore, Hayward's trial counsel indicated he was out of town for part of the two-week period, and the prosecutor was aware he would be out of town when she left the discovery for the defense to retrieve. Appellant's trial counsel then addressed the issue of a mistrial:

> [Trial Counsel]: So now with that being said, I do realize that it puts us in a somewhat awkward position to go forward. So as far as the Court making this determination to consider and grant a mistrial, that is our position and have no, nothing else relative to that.

When questioned by the trial court, individually, whether they had any objection to a mistrial, Ashford's trial counsel stated, "No, Your Honor" and Hayward's trial counsel stated, "Not at this time, no."

{¶ 19} The trial court then inquired whether there was "any less draconian action that either side can think of that I should take other than declaring a mistrial today and rescheduling this case for trial?" The parties responded as follows:

---

[2] At the time of appeal, the state had not filed a motion in limine.

[Trial Counsel]: I was going to say other than a dismissal I don't think there is.

THE COURT: Anything from the State"

[Prosecutor]: No, Judge.

{¶ 20} Following this exchange, the trial court inquired, "Is there a double jeopardy issue for me declaring a mistrial?"  The state addressed the potential double jeopardy issue, arguing there was no prosecutorial misconduct, and therefore, no double jeopardy issue.  Appellants' trial counsel did not address the trial court regarding double jeopardy concerns or prosecutorial misconduct.  Consistent with their prior assurance to the trial court that they had no objection to a mistrial, Ashford's and Hayward's respective trial counsel raised no objection to rescheduling the trial.

{¶ 21} The trial court declared a mistrial and immediately scheduled a new trial date with participation of all counsel.  Appellants' trial counsel consulted their respective calendars and agreed to a new trial date on November 15, 2022.

{¶ 22} On September 16, 2022, Hayward filed a motion to compel regarding information related to the police investigation, including the identity of other suspects, names of all persons interviewed as part of the investigation, and the results of all forensic tests conducted.  The motion specifically referenced the proposed deposition of Detective Heban, as follows:

The Court suggested, and the State acquiesced to, allowing a deposition of an ancillary, nonetheless, percipient witness, prior to

commencing trial. The scheduled morning of the deposition, the State of Ohio, reneged, refused to present the witness, and indicated it was 'objecting' to the deposition.

{¶ 23} On October 5, 2022, Ashford filed an identical motion to compel, with the same argument and the same reference to the deposition.

{¶ 24} The state filed opposition to the motions to compel, arguing it provided discovery in compliance with the Criminal Rules of Procedure.

{¶ 25} On October 12, 2022, Ashford and Hayward filed a joint motion to dismiss the indictment, arguing prosecutorial misconduct led to the trial court's declaration of a mistrial. In support, Ashford and Hayward detailed the production of discovery by the state, including the recording produced on August 16, 2022. Ashford and Hayward argued that the late production of the recording, two weeks prior to trial, combined with off-the-record conversations between trial counsel and the prosecutor, demonstrated misconduct aimed at procuring a mistrial. Ashford and Hayward did not address the issue of consent within the motion to dismiss, relying solely on argument of prosecutorial misconduct that procured the mistrial.

{¶ 26} On November 1, 2022, the state filed its response to the motion to dismiss. The state addressed its production of discovery, including the August 16 recording, characterizing that recording as a video of the alleged victim's discussion with a detective regarding a 2019 burglary, identifying Ashford and Hayward. The state also indicated that the video included discussion of the alleged victim's work as a confidential

15.

informant.  The state argued that, after conducting research, the prosecution determined a deposition was not appropriate or provided for under Crim.R. 15.  The state further argued that the defense did not object to the trial court declaring a mistrial, sua sponte, and therefore dismissal based on double jeopardy was not proper.

{¶ 27} On November 2, 2022, while the motion to dismiss was pending, the trial court ruled on the motions to compel filed by Ashford and Hayward.  The trial court granted the motion, and "following an off-the-record discussion in chambers," scheduled deposition on November 9, 2022. The trial court further granted the state leave to file a motion in limine regarding "whether the deposition should take place in camera."

{¶ 28} Also on November 2, 2022, the state filed a memorandum in support of permitting deposition of the state's detective in chambers, outside the presence of appellants.  The state argued that the detective was engaged in ongoing undercover operations, and officer safety required either closing the courtroom or shielding the detective's identity by permitting the detective to testify in disguise.  Ashford and Hayward each opposed the state's motion, arguing that excluding the defendants from the deposition is prohibited by Crim.R. 15.

{¶ 29} On November 9, 2022, the trial court held a hearing on the motions to dismiss.  At hearing, appellants' trial counsel reiterated argument regarding prosecutorial misconduct, referencing the discovery produced on August 16, as well as subsequent conduct by the prosecutor and the state's witness, Detective Heban, who failed to appear for deposition a second time.  Trial counsel also attempted to supplement the record with

16.

recollections of off-the-record discussions leading up to the declaration of a mistrial, suggesting the defense opposed a mistrial, contrary to the record that contained Ashford's and Hayward's responses to the trial court's inquiry, indicating no objection. The trial court took the matter under advisement. The trial court also continued the trial date of November 15, 2022.

{¶ 30} On November 30, 2022, the trial court denied the motions to dismiss, finding appellants consented to mistrial. Additionally, the trial court found no prosecutorial misconduct and determined that manifest necessity required a mistrial so that appellants might have an opportunity to explore potentially exculpatory evidence.

{¶ 31} Appellants each filed a timely appeal from this judgment, and we consolidated the appeals for review.

### III. Assignments of Error

{¶ 32} On appeal, Ashford and Hayward assert identical assignments of error, as follows:

1. The trial court erred in finding the Defendants consented to the declaration of a mistrial.

2. The trial court erred in denying Defendants' motion to dismiss after it *sua sponte* declared a mistrial as a result of prosecutorial misconduct that was intentionally calculated to invite the mistrial.

3. The trial court erred in denying Defendants' motion to dismiss

because it abused its discretion by *sua sponte* declaring a mistrial absent a manifest necessity to do so.

4. Even if this Court finds Defendants consented to the declaration of a mistrial, the trial court erred in denying Defendants' motion to dismiss because their consent was predicated on prosecutorial overreaching.

{¶ 33} For ease of discussion, we address some assignments of error together.

## IV. Analysis

{¶ 34} We review the trial court's denial of a motion to dismiss the indictment, based on double jeopardy, under a de novo standard. (Citations omitted) *State v. Anderson,* 148 Ohio St.3d 74, 2016-Ohio-5791, 68 N.E.3d 790, ¶ 20. In considering the underlying basis for a mistrial, however, we defer to "the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial." (Citations omitted) *State v. Glover,* 35 Ohio St.3d 18, 19, 517 N.E.2d 900 (1988).

{¶ 35} The trial court sua sponte declared a mistrial after the jury was impaneled and sworn. Once the jury is sworn, jeopardy attaches, requiring a determination of "whether retrial is barred by the prohibition against double jeopardy." *State v. Calhoun,* 18 Ohio St.3d 373, 375, 481 N.E.2d 624 (1985). The right against repeated prosecution is not absolute. *State v. Owens,* 127 Ohio App.3d 65, 68, 711 N.E.2d 767 (6th Dist.1998). "The Double Jeopardy Clauses of both the Fifth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, and Article

18.

I, Section 10, of the Ohio Constitution prohibit a person, for the same offense, from being "twice put in jeopardy of life or limb." *State v. Campbell,* 6th Dist. Wood No. WD-18-035, 2019-Ohio-1174, ¶ 7, quoting the Fifth Amendment.

{¶ 36} Double jeopardy prohibitions apply to bar "(1) 'a second prosecution for the same offense after acquittal,' (2) 'a second prosecution for the same offense after conviction,' and (3) 'multiple punishments for the same offense.'" *State v. Mutter,* 150 Ohio St.3d 429, 2017-Ohio-2928, 82 N.E.2d 1141, ¶ 15, quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds, Alabama v. Smith,* 490 U.S. 794, 802, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). In the present case, the prohibition against multiple punishments is implicated, as the Double Jeopardy Clause "protects a criminal defendant from repeated prosecutions for the same offense." *Owens* at 68, quoting *Oregon v. Kennedy,* 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982).

## A. Appellants consented to the mistrial

{¶ 37} The trial court denied appellants' joint motion to dismiss, finding they consented to the mistrial. Appellants challenge this finding in their first assignment of error, arguing they did not expressly consent to a mistrial, and furthermore, the totality of the circumstances fails to demonstrate implicit consent to a mistrial. They further argue that, even if their trial counsel impliedly consented, the record of the hearing on the joint motion to dismiss demonstrated that appellants did not give their respective trial counsel authority to consent.

19.

{¶ 38} As an initial matter, we note that the record indicates appellants were present in court when the trial court declared a mistrial and scheduled a new trial date. Furthermore, neither Ashford nor Hayward raised ineffective assistance of counsel as an error on appeal. *See, e.g., In re S.B.,* 183 Ohio App.3d 300, 916 N.E.2d 1110, ¶ 25 (10th Dist.) (challenging effectiveness of counsel based on claim attorney did not advocate client's wishes). The Ohio Rules of Professional Conduct, moreover, allocate authority between client and lawyer, pursuant to Rule 1.2(a), providing, in part: "A lawyer may take action on behalf of the client as is impliedly authorized to carry out the representation." With no challenge to the performance of appellants' trial counsel, and nothing in the record to support a finding that trial counsel exceeded the implicit authority to "carry out the representation," we find no basis to consider any claimed impropriety by appellants' trial counsel. We, therefore, address the issue of consent to mistrial without consideration of appellants' suggestion of ineffective assistance of counsel.

{¶ 39} "The general rule is that mistrials, granted at the request of defendant or with defendant's consent, do not bar retrial on the basis of double jeopardy." *State v. Jackson,* 6th Dist. Lucas No. L-89-196, 1990 WL 40138 (Apr. 6, 1990), citing *United State v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). Although the defense did not request the mistrial, we may imply consent "when a defendant has had an opportunity to object to the declaration of a mistrial and fails to do so[.]" *Jackson, supra,* quoting *U.S. v. Puleo,* 817 F.2d 702, 705 (11th Cir.1987).

20.

**{¶ 40}** In *State v. Jackson,* 6th Dist. Lucas No. L-89-196, 1990 WL 40138 (Apr. 6, 1990), we considered circumstances in which a defendant did not object to a mistrial, but also did not explicitly voice his consent. We noted that the defendant "had an opportunity to object to the mistrial but [chose] to forego that opportunity." *Jackson* at *2. Additionally, we agreed with the trial court that "it is difficult to comprehend how defendant Jackson could other than benefit from the mistrial." *Id.* Therefore, we found implicit consent to a mistrial. *Id.*

**{¶ 41}** Here, appellants, through their respective trial counsel, were attempting to gather information on the alleged victim's activities as a confidential informant for the police, based on new discovery the prosecutor supplied two weeks before trial. Appellants' trial counsel argued that the deposition of Detective Heban was necessary to obtain this information, to effectively cross-examine the alleged victim. Therefore, the defense arguably benefited from the mistrial, as they gained an opportunity to explore potential impeachment of the alleged victim, referring to the information as potentially exculpatory evidence. Furthermore, when asked if they objected, Ashford and Hayward – through counsel – stated they did not object to a mistrial.

**{¶ 42}** Other jurisdictions have found consent in circumstances similar to those demonstrated in this case. For example, in *State v. Mengistu,* 10th Dist. Franklin No. 02AP-497, 2003-Ohio-1452, the Tenth Appellate District found a defendant consented to a mistrial, even though the prosecutor made the request. In *Mengistu,* the defense acknowledged it created "egregious error" by referencing a polygraph examination, and

21.

after the prosecutor requested a mistrial, stated, "I have no objection to the court declaring a mistrial at this time and rescheduling this for a hearing at a later date." *Id.* at ¶ 21. The Tenth District noted that the important consideration in determining consent concerned whether "the defendant retain[ed] primary control over the course to be followed." *Mengistu* at ¶ 27, quoting *United States v. DiPietro,* 936 F.3d 6, 11-12 (1st Cir.1991), quoting *Dinitz* at 609. Because defense counsel in *Mengistu* "acquiesced in the decision to grant a mistrial" and "expressly consented to the scheduled of a new trial[,]" the court found the defendant "retained control over the course to be followed" and "retrial was not barred by double jeopardy." *Mengistu* at ¶ 27, citing *DePietro* at 12.

{¶ 43} The Sixth Circuit Court of Appeals, in addressing the issue of implied consent, has required "some positive indication from the record of the defendant's willingness to consent to declaration of a mistrial" before finding consent. (Citation omitted) *United States v. Gantley,* 172 F.3d 422, 428 (6th Cir.1999). Applying this requirement, a court must undertake "an especially careful examination of the totality of circumstances, to ensure a defendant's consent is not implied when there is a substantial question of whether the defendant did, in fact, consent." *Id.* at 429. The court in *Gantley* found no positive indication of consent, based on the circumstances that included only the defendant's silence. *Gantley* at 429. However, other courts, applying the rule from *Gantley,* have found implied consent based on a failure to object combined with other factors. For example, in *United States v. Osaghae,* 20 Fed.Appx. 369, 371 (6th Cir.2001), the Sixth Circuit found a failure to object combined with other factors,

22.

including trial counsel's request to withdraw during trial and lengthy discussion with the trial court regarding potential alternatives to mistrial, demonstrated implied consent to mistrial.

{¶ 44} Here, appellants did more than fail to object. Ashford and Hayward, through their respective trial counsel, informed the trial court that they *did not object* to the mistrial. Appellants' trial counsel then participated in selecting a new trial date, and following the mistrial, continued to seek the deposition of Detective Heban, filing a motion to compel which the trial court granted. All of these circumstances, in combination, demonstrate acquiescence to a mistrial, or a positive indication of consent, with the defense amenable to a mistrial to obtain more time to depose Detective Heban. Based on this record, we find appellants consented to the mistrial.

{¶ 45} We therefore find appellants' first assignment of error not well-taken.

### B. Consent to mistrial was not predicated on prosecutorial misconduct.

{¶ 46} In their second and fourth assignments of error, appellants argue that the prosecutor's conduct provoked a mistrial. As a result, they argue that the trial court's sua sponte declaration of a mistrial, or in the alternative, the defense consent to a mistrial, prevent a retrial based on the bar of double jeopardy. As support for claims that the prosecution provoked a mistrial, appellants point to the late production of discovery that revealed the alleged victim's history as a confidential informant, combined with the state's failure to produce Detective Heban for deposition, prior to declaration of a mistrial.

23.

**{¶ 47}** Although consent has been addressed as a waiver of the right against successive prosecutions, waiver has little relevance if the prosecutor provoked the mistrial. (Citations omitted) *United States v. Dinitz,* 424 U.S. at 609, 96 S.Ct. 1075, 47 L.Ed.2d 267. "In such circumstances, the defendant generally does face a 'Hobson's choice' between giving up his first jury and continuing a trial tainted by prejudicial judicial or prosecutorial error." *Id.* Thus, in order to find a successive trial barred by double jeopardy, based on prosecutorial misconduct, we must find the prosecution intended to "goad" the defense into consenting to mistrial. *See Oregon v. Kennedy,* 456 U.S. at 676, 102 S.Ct. 2083, 72 L.Ed.2d 416; *Anderson,* 148 Ohio St.3d 74, 2016-Ohio-5791, 68 N.E.3d 790; *State v. Glover,* 35 Ohio St.3d 18, 517 N.E.2d 900 (1988), syllabus.

**{¶ 48}** The trial court, in denying dismissal, found no misconduct by the prosecutor that provoked a mistrial. The specific misconduct, argued by appellants in their joint motion to dismiss, concerned the disclosure on August 16, two weeks before the scheduled trial date, and the failure of Detective Heban to appear for deposition the morning of August 31, 2022. In the motion to dismiss, appellants argued misconduct, as follows:

> Although the State asserts it 'never hid any evidence' nonetheless it endeavored to prevent the defendants from obtaining, examining, and utilizing lawfully requested impeachment materials to challenge the credibility of the one witness whose testimony the State's case is entirely dependent.

24.

**{¶ 49}** The trial court rejected appellants' characterization of events leading up to the declaration of a mistrial. Specifically, the trial court noted the delay by the defense in reviewing the discovery and the lack of any request for continuance or service of a subpoena, prior to the start of trial. The trial court concluded:

> There is no indication that the prosecutor was aware that the witness was a confidential informant and intended to hide that fact from defense counsel. The supplemental discovery disc was provided to defense counsel two weeks prior to trial. Apparently, defense counsel did not review the disc until the weekend prior to trial. Defendant Hayward's counsel cannot state with certainty that he did not have an opportunity to review the disc before leaving town. And, when defense counsel raised this issue immediately before trial, the State and the Court made every effort to address this issue while preserving the August 30 trial date. The Court finds no indication of prosecutorial misconduct, and further finds no intent on the State's part to 'orchestrate' a mistrial, as Defendants suggest.

**{¶ 50}** In challenging the trial court's finding on appeal, appellants reference matters occurring both off the record and after the mistrial was declared. They reference the hearing transcript for their motion to dismiss, containing recollections of matters discussed off the record prior to the declaration of a mistrial. They also reference a court-ordered deposition, but the trial court did not grant the defense motion to compel until after the mistrial was declared, with earlier deposition "suggested" by the trial court to

25.

facilitate trial counsels' discovery efforts so trial might proceed.[3]  Furthermore, appellants argue that the state assured the trial court that Detective Heban would appear, and then failed to produce the detective, knowing his failure to appear would provoke a mistrial.  The record, however, is more nuanced.

{¶ 51} Based on the record, the prosecutor indicated she would "work on producing the detective so this deposition can happen" and would "see if he can be here," but otherwise continued to object to the deposition.  The prosecutor also noted that appellants' trial counsel intended to subpoena the detective, and in the context of the detective's attendance, appellants' trial counsel informed the trial court they would issue a subpoena, stating, "if we issue a subpoena[, he] has to show up."  The next morning, trial counsel had a subpoena in hand, but had not yet served it on the detective.  Detective Heban did not appear for deposition.

{¶ 52} In addition to relying on matters not within the record, appellants argue that the trial court's finding regarding prosecutorial misconduct was conclusory, and focused on the conduct of appellants' trial counsel rather than the intent of the prosecutor.  The record cited in support, however, belies this assertion.

{¶ 53} While appellants argued that they were correct to rely on the state to produce Detective Heban for deposition on the second morning of trial, the trial court

---

[3] In their briefs, Ashford and Hayward characterize the trial court's attempt to mediate a resolution to the discovery issue as a court-ordered deposition.  This conflicts with their position in the joint motion to dismiss, in which they acknowledged the trial court "suggested" a deposition and tried to assist in scheduling the deposition.

26.

rejected trial counsel's argument, noting the discussions regarding deposition and trial counsel's failure to issue a subpoena to the detective. The trial court addressed this at hearing, stating:

> THE COURT: But you're doing a double standard. You're saying the State acted improperly because they didn't do what they said they were going to do, but you're saying it doesn't apply to us because we were going to do it that very second instead you saying you were going to issue a subpoena to compel the deponent to appear. It cuts against your argument of prosecutorial misconduct because you did not do the act that would have compelled the deponent to appear.

{¶ 54} "When prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, '[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error.'" *Oregon v. Kennedy,* 456 U.S. at 676, 102 S.Ct. 2083, 72 L.Ed.2d 416, quoting *Dinitz,* 424 U.S. at 609, 96 S.Ct. 1075, 47 L.Ed.2d 267. Retrial is barred only where the misconduct is intended to "goad" a mistrial. *Id.*

{¶ 55} Here, there is nothing in the record to support a finding that the prosecutor intended to provoke a mistrial. Significantly, the trial court did not find any misconduct by the state, relevant to the discovery issued raised by appellants' trial counsel. The trial court noted the prosecutor produced the supplemental discovery two weeks before trial and appellants' trial counsel did not review the discovery until the weekend prior to trial.

27.

The trial court further noted that the prosecutor intended to proceed to trial and objected to any delay.

{¶ 56} Additionally, appellants cite to nothing in the record demonstrating conduct, in the context of trial, that involved an intentional act of deception or an intentional withholding of evidence, designed to provoke a mistrial. Instead, appellants argue that the late-produced discovery indicated the potential existence of exculpatory evidence, and despite their awareness of this discovery prior to commencement of trial, double jeopardy should bar a retrial based on the state's failure to produce the detective to permit further investigation by the defense into the matter. We find no support for appellants' position, relative to a known discovery dispute prior to the start of trial. Rather, prosecutorial misconduct, for double jeopardy considerations, is generally viewed in the context of intentional deception for the purpose of provoking a mistrial.

{¶ 57} In *State v. Loza,* 71 Ohio St.3d 61, 69-70, 641 N.E.2d 1082 (1994), the Ohio Supreme Court addressed the issue of misconduct, intended to provoke a mistrial, finding the discovery of previously unknown test results through testimony from the state's final witness at trial not indicative of misconduct aimed at causing a mistrial. In *Loza,* the defense argued that this information and other evidence could have been used to challenge the credibility of one of the state's main witnesses, who testified that the defendant confessed to her. *Id.* In considering an intent to provoke a mistrial, the Supreme Court did not focus on whether the state withheld the discovery, but whether the state committed a deceptive act by intentionally withholding the report in order to cause a

28.

mistrial. *Id.* at 70-71. Because the state was not aware of the report until the witness testified, the Court determined there was "no indication that the state engaged in an intentional act of deception, or that the state intentionally withheld exculpatory evidence." *Id.* at 71.

{¶ 58} Likewise, in *State v. Hodges,* 2018-Ohio-447, 105 N.E.3d 543 (7th Dist.), ¶ 8; ¶ 21-23, the Seventh District Court of Appeals found no indication of a prosecutorial "intent to create error in order to force a new trial" where Hodges' co-defendant entered a negotiated plea in the middle of trial, after the trial court granted a motion to strike the testimony of the state's eyewitness. After previously providing an alibi for Hodges, his co-defendant incriminated him at trial. *Id.* at ¶ 22-23. As a result, Hodges requested that the trial court grant a mistrial. *Id.* at ¶ 9. In finding no intent to provoke a mistrial, the Seventh District noted the prosecution gained no material advantage from a mistrial, and the only intent apparent in the record was the prosecution's intent "to convict the defendant with the co-defendant's testimony." *Id.* at ¶ 24.

{¶ 59} Here, there was no intent to deceive, as the prosecution disclosed the information that led appellants' trial counsel to believe that potentially exculpatory evidence existed, and the trial proceeded despite this knowledge. As a result, appellants remained in control, with knowledge of the discovery, and the record does not support a finding that the prosecutor committed an intentional act of deception or intentionally withheld evidence with an intent to force a mistrial.

29.

**{¶ 60}** Accordingly, we find appellants' second and fourth assignments of error not well-taken.

### C. Manifest necessity is not a consideration where there is consent

**{¶ 61}** In their third and final assignment of error, appellants argue the trial erred by declaring a mistrial in the absence of a manifest necessity to do so. Because we have determined that appellants' consented to a mistrial, "the presence or absence of manifest necessity is not a consideration." *Mengistu,* 10th Dist. Franklin No. 02AP-497, 2003-Ohio-1452, at ¶ 28, citing *Oregon v. Kennedy,* 456 U.S. at 672, 102 S.Ct. 2083, 72 L.Ed.2d 416 (additional citation omitted).

**{¶ 62}** Appellant's third assignment of error, therefore, is not well-taken.

### V. Conclusion

**{¶ 63}** For the forgoing reasons, we affirm the judgment of the Lucas County Court of Common Pleas. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.      _____
                JUDGE

Christine E. Mayle, J.

Gene A. Zmuda, J.       _____
CONCUR.            JUDGE

             _____
                JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.